### BELL, for use, etc., *v.* WHITEHEAD *et al.*

1. A homestead taken out by a debtor since the adoption of the constitution of 1877 but under the provisions of the constitution of 1868 is good as against a debt owed by him before the adoption of the later constitution.

2. Promissory notes containing waivers of homestead and exemption, given in 1890, may be enforced against property subsequently sought to be exempted under the provisions of the constitution of 1868.

3. It follows that where land set apart as a homestead as above indicated is levied upon and sold under an execution based on such promissory notes, and a contest arises between the holder of that execution and the owner of a judgment based on the debt contracted prior to 1877, it is not error to award the fund in the sheriff's hands to the holder of the execution under which the land was sold.

Submitted May 1, — Decided June 4, 1902.

Money rule. Before Judge Russell. Jackson superior court. November 15, 1901.

*Strickland & Green* and *Robert S. Howard,* for plaintiff in error. *W. I. Pike* and *J. C. Turner,* contra.

SIMMONS, C. J.   It appears from the record that G. R. Duke became surety on a guardian's bond, prior to the adoption of the constitution of 1877.   In this bond there was no waiver of homestead or exemption.   Subsequently he was sued upon the bond, and a judgment rendered in 1885 against him as surety.   In 1890 Duke became indebted to S. J. Smith, J. A. Duke, and W. A. Watson, and gave to each of them a promissory note containing a waiver of homestead and exemption.   After the execution of these notes, he took a homestead under the provisions of the constitution of 1868.   Smith, J. A. Duke, and Watson's administrator took judgments, in 1890, upon their notes, and transferred their judgments to Whitehead.   Whitehead had one of these executions levied upon 75 acres of the land set apart to Duke as a homestead.   The land was sold and was bought in by Whitehead.   The sheriff refused to make Whitehead a deed to the property and credit the amount for which the land was sold on Whitehead's fi. fas.; whereupon Whitehead brought a rule against him, calling upon him to show cause why he refused to do so.   The sheriff answered that at the time of the sale numerous fi. fas. against Duke were placed in his hands and claimed the money, among them one in favor of Bell, ordinary, for the use of Mrs. Daniel, against Duke as surety on a guardian's

bond made prior to 1877. This judgment was, as above stated, dated in 1885. These facts were agreed upon by the parties. The question as to the distribution of the money arising from the sale was submitted to the judge without the intervention of a jury. The judge awarded the money to the Whitehead executions, and ordered the sheriff to execute to Whitehead a deed to the land which he had purchased at the sale. Bell, for the use of Mrs. Daniel, sued out a bill of exceptions complaining of this ruling and judgment, on the ground that the older judgment was entitled to priority over the younger, and that it was error to hold that the homestead property could be sold under the executions held by Whitehead.

1. Whether Duke's liability on the guardian's bond arose prior to 1877 does not appear from the record. We presume, however, that, inasmuch as he took the homestead under the provisions of the constitution of 1868 and it was taken to prevent the subjection of the property to this debt, the liability on the bond must have occurred prior to 1877. If this is true, Duke had a right, under the constitution of 1877, to take a homestead, as against this liability, under the provisions of the constitution of 1868. The homestead thus set apart was exempt from levy and sale for any debt Duke had contracted prior to 1877. The constitution of 1877 (Civil Code, § 5918) expressly declares that any homestead which might thereafter be set apart by virtue of the provisions of the constitution of 1868 shall be valid as against all debts and liabilities existing at the time of the adoption of the present constitution, to the same extent that it would have been had the former constitution not been revised. It would seem that under this section of the constitution the protection thus afforded was against those debts and liabilities only which had been contracted before the adoption of the present constitution. It is silent as to debts contracted since that time, and to which the provisions of the later constitution apply. Under this section the head of the family could, at least as against debts contracted prior to the adoption of the constitution of 1877, have property set apart to the full value or amount allowed under the constitution of 1868. See *Gerding* v. *Beall*, 63 *Ga.* 561.

2. It will be remembered that Duke did not apply for the homestead until 1890. He had, earlier in the same year, given promissory notes in which he waived homestead. Against these debts

the homestead was not good. The constitution of 1877, article 9, section 3, paragraph 1, expressly declares that a debtor may waive or renounce the benefit to the exemption allowed in the article. This article contains the provision allowing homestead to be taken out under the constitution of 1868 as against old debts. This paragraph seems, therefore, to allow a debtor to waive or renounce, as against debts contracted since 1877, the homestead and exemption allowed under the present constitution, and also whatever rights he may have against them under the constitution of 1868. In other words, the debtor may waive or renounce whatever exemption rights are conferred upon him by any section or paragraph of article 9 of the constitution. Hence the waivers made by Duke in the promissory notes related not only to the exemption provided for by the present constitution but also to whatever rights he might have under the provisions of the former constitution. As he waived these rights in the notes, the homestead set apart to him as against the debt due Bell, for the use of Mrs. Daniel, was not good as against these waiver notes. The waiver was made before the setting apart of the homestead, and the latter was a nullity so far as concerns these particular debts. It may be a hardship on the holder of the older debt and judgment, as was argued by counsel for the plaintiff in error, but courts have nothing to do with the hardship of particular cases, but must decide what the law is, however it may affect the rights of particular individuals. A debtor may give his promissory note to one person and at a later date give to another person another note which is secured by mortgage, and, if the debtor is insolvent, it may turn out that the junior creditor is secured while the older creditor loses his entire debt. The law protects the vigilant. If Mrs. Daniel had taken the precaution to have a proper waiver from Duke when he signed the guardian's bond, she could have claimed this fund, for her judgment was older than the others. But Whitehead, or the persons under whom he claims, were vigilant and took a waiver, and they therefore have a priority over Mrs. Daniel in the distribution of this fund. See *Moore* v. *Frost*, 63 *Ga.* 296 ; *Kirby* v. *Reese*, 69 *Ga.* 452 ; *Dean* v. *Feely*, 69 *Ga.* 804.

3. For the reasons above given, we think there was no error in the judgment of the lower court.

*Judgment affirmed. All concurring, except Lewis, J., absent.*