ROSENTHAL *v.* LANGLEY *et al.*

No. 10400.   FEBRUARY 12, 1935.

*Curry & Curry,* for plaintiff in error.
*Hammond, Kennedy & Kennedy,* contra.

RUSSELL, Chief Justice.   Mrs. Langley obtained a judgment against Mrs. Rosenthal on September 19, 1933, on a homestead-waiver note, on which execution issued and was recorded on the general execution docket on September 21, 1933.   On October 24, 1933, Mrs. Rosenthal filed a voluntary petition in bankruptcy, and was adjudicated a bankrupt on the following day.   She claimed a homestead, and the trustees set apart to her certain household and kitchen furniture and jewelry, all of the value of about $900.   Mrs. Langley made proof of her claim in the bankruptcy court, and objected to the confirmation by the referee of the homestead set apart to the bankrupt.   On November 28, 1933, the referee

announced that he would approve the award of the homestead, but would not enter the order of approval until the following day. Thereupon the referee allowed Mrs. Langley to withdraw her proof of claim. On November 28, 1933, Mrs. Langley filed in the superior court a petition reciting the facts, and praying that a receiver be appointed to take charge of the homestead property and subject it to the lien of her judgment, setting out that she would apply to the bankruptcy court for an order withholding discharge of the bankrupt until the equitable petition was determined. By amendment she alleged that the bankrupt had executed a conveyance of the property set apart to her daughter, Mrs. Weinstein, for the purpose of defrauding petitioner, and prayed that Mrs. Weinstein be made a party defendant in the equitable proceeding. Mrs. Weinstein answered that she received the conveyance of the homestead in payment of certain homestead-waiver notes she held against her mother. Thereafter Mrs. Fridenberg intervened, setting up certain homestead-waiver notes held by her, executed by Mrs. Rosenthal, and praying that she share in the distribution of the proceeds of any sale that might be made of the homestead property. The bankrupt applied to the ordinary for an order setting apart the household furniture to her, which was granted. By demurrer to the petition, plea in abatement, and answer, the bankrupt asserted that the judgment of the plaintiff was invalid, since it was obtained within four months of her being adjudicated a bankrupt. The court struck the plea in abatement and the material portions of the answer, overruled the demurrer to the petition, and thereafter directed a verdict finding the jewelry subject to the fi. fa. of the plaintiff. Mrs. Rosenthal's motion for a new trial was overruled. In her bill of exceptions she assigns error on the refusal of a new trial, as well as on the antecedent rulings on the pleadings, as to which exceptions pendente lite had been preserved. Neither Mrs. Weinstein nor Mrs. Fridenberg excepted to the judgment of the court, and in the bill of exceptions they, as well as Mrs. Langley, are denominated as defendants in error. In the circumstances it is not altogether apparent that the plaintiff in error has such standing as will sustain her right to prosecute the present bill of exceptions; for she has parted with all her rights to the subject-matter of the suit, and the party to whom she sold the res here involved has preferred not to take any exception to the judgment of the

court below. To authorize a reversal of the judgment it is not enough to show error, but injury must also concur; and upon our first review of the record we were inclined to deal with the case in rather a summary manner, and affirm the judgment of the trial court upon the practical theory that there was no real plaintiff in error.

In the original brief of able counsel for the plaintiff in error request was made that this court review and overrule several decisions of this court, which request in a supplemental brief was so modified as to ask that the court refuse to follow the decisions of this court referred to, and adhere to the ruling of the Supreme Court of the United States in Chicago, Burlington & Quincy R. Co. v. Hall, 229 U. S. 511 (33 Sup. Ct. 885, 57 L. ed. 1306). The request of counsel is enforced by the words of Chief Justice Bleckley in *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754 (11 S. E. 233, 8 L. R. A. 273), that "When we know with certainty that a question arising under the constitution of the United States has been definitely decided by the Supreme Court of that government, it is our duty to accept the decision, for the time being, as correct, whether it coincides with our opinion or not. Any failure of due subordination on our part would be a breach, rather than the administration, of law." Learned counsel for plaintiff in error assert that the case is controlled by the pleadings, and that the petition of the plaintiff in the lower court set out every fact essential and necessary to raise the questions contended for by the plaintiff in error. The defendant in the court below (plaintiff in error here) filed a plea in abatement, based upon the ground that the subject had been already adjudicated in the bankruptcy court. This plea was stricken on demurrer, and exceptions pendente lite were taken, and error was properly assigned thereon. Next, the plaintiff in error demurred to the petition upon the ground that the judgment lien was obtained against an insolvent defendant within four months of the bankruptcy proceeding, and for that reason was null and void. The same question was raised by the answer of the defendant. The demurrer to the petition was overruled, and a demurrer by the plaintiff to that part of the defendant's answer setting up the fact of the assignment and that the judgment had been obtained within four months was sustained, and exceptions were preserved to these rulings. The court directed a verdict for

the plaintiff, a motion for new trial was overruled, and the bill of exceptions followed.

It appears from the record that the judgment which was obtained was based upon a homestead-waiver note. The plaintiff in error admitted that she had sold and transferred to her daughter all of her right, title, interest, and estate in and to the homestead exemption set apart to her in the bankruptcy proceeding, and had no further interest in the subject-matter of the suit. We are of the opinion, upon a careful review of the record and the briefs of counsel, that there are only four issues of law presented in this case. (1) Can this equity proceeding to subject the homestead to the lien of the execution based upon a homestead-waiver note be maintained? (2) Does the fact that the holder of the homestead-waiver note appeared in the bankruptcy court and objected to the allowance of the homestead, and the bankruptcy court thereafter allowed the exemption, constitute an adjudication of the right of the holder of the homestead-waiver note to institute a proceeding for the purpose of subjecting the homestead to the lien of her execution? (3) Is a judgment based on a homestead-waiver note, rendered within four months prior to the adjudication in bankruptcy, superior to a conveyance of the homestead which was made after the adjudication in bankruptcy, where execution issued upon the judgment and was entered upon the general execution docket? (4) Are the rights of a judgment creditor based upon a homestead-waiver note superior to the rights of holders of homestead-waiver notes which had not been reduced to judgment?

That an equitable proceeding is a proper remedy to subject the homestead set apart in a court of bankruptcy to the claim of a creditor holding a waiver note has frequently been held by this court. In *Bell* v. *Dawson Grocery Co., 120 Ga.* 628 (3) (48 S. E. 150), this court held that "Inasmuch as, on account of the adjudication in bankruptcy, B can not sue A at common law and obtain a judgment against him, and inasmuch as A is estopped by his waiver to claim an exemption against B, the latter's remedy is in a court of equity, which court is authorized, under the laws of this State, to give B a judgment in rem against the exempted property, subjecting it to his claim, and where such property is personalty of a perishable nature or such as will be destroyed in the use, to appoint a receiver to take charge of such property until the judgment

in rem has been obtained." In the opinion it was said: "Whenever a person in this State enters into a contract with another, whereby he agrees, for a sufficient consideration, to pay money, and, in his obligation, waives his right of homestead and exemption, this waiver is valid, and the debtor will be thereafter estopped to claim that any of his property is exempt from the judgment founded upon this contract. The waiver becomes in the nature of a security, in that the debt may be made out of any property owned by the debtor, without regard to any exemption rights which the debtor would have had but for the waiver. In other words, when the debtor waives the homestead and exemption, he means that all of his property shall be a security to the creditor for the payment of that debt. This then gives the creditor a legal right to rely upon all of the debtor's property for the payment of the debt. In the present case, as before stated, the creditor could not enforce his claim by a common law proceeding against the debtor. From this remedy he is precluded by the proceedings in bankruptcy. The debtor has $1600 worth of property set apart to him. It is, or will be, in his possession. If it is personal property he may dispose of it by mere delivery; or it may be of such nature as to be consumed in the use. Much of it may be used or destroyed in his hands. In any event the creditor would lose his rights, unless the property could be protected by placing it in the hands of a receiver until the creditor can obtain a judgment which will bind the property. The Civil Code [1895], § 4904, declares: 'A court of equity may appoint a receiver to take possession of, and hold subject to the direction of the court, any assets charged with the payment of debts, where there is manifest danger of loss, or destruction, or material injury to those interested.' In the present case it appeared that there was great probability of loss and destruction, and consequent injury to the interests of the creditor, if the debtor was given possession of the exempted property. The debtor has no right to complain; for, so far as appears, he voluntarily signed the waiver and estopped himself to claim any exemption as against the claims of the creditor. The plaintiff gave him credit for the goods, doubtless upon the faith of the waiver. By signing the waiver he obtained the goods. He can not now say that, because he has been adjudicated a bankrupt, the waiver amounts to nothing." See also *Adams* v. *Bishop,* 174 *Ga.* 420 (163 S. E. 148).

■ Does the fact that the holder of a judgment based upon a homestead-waiver note appeared in the bankruptcy court and objected to the allowance of the homestead on several grounds, among which was that the bankrupt had waived her homestead against this creditor, and the court, after disclaiming jurisdiction to pass upon this question, by allowing the judgment creditor to withdraw all proof of her claim, constitute res judicata of the right of the holder of the homestead-waiver note to institute an equitable proceeding for the purpose of subjecting the homestead to the lien of her execution? We are of the opinion that the allowance of the homestead by the referee in bankruptcy does not raise any question other than whether the applicant is entitled by the statutes of his State to an exemption for the purpose of homestead within the amount prescribed by the statutes of that State. The setting apart of property for homestead purposes raises no question as to whether the applicant may or may not take it subject to prior liens or a voluntary contract upon his part by which he may have waived the exemption as to a particular creditor. In this case it appears that the bankruptcy court ruled that it did not have jurisdiction to pass upon the question of the homestead-waiver note or to enforce any rights which the creditor had by virtue of a homestead-waiver note. The bankruptcy court expressly withheld judgment until the plaintiff could apply to the court of equity, which would have jurisdiction to enforce her rights. Two entirely different questions were raised in the two courts. The only question in the bankruptcy court was whether the bankrupt was entitled to a homestead. In this court the homestead is recognized as having been set apart, and it therefore is the subject-matter upon which the waiver note can operate. For an issue to become res judicata there must be an adjudication of the same issues by a court of competent jurisdiction. The Code of 1910, § 4336, declares: "A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." A court of bankruptcy has no jurisdiction to enforce the rights of the holder of a waiver note. In Lockwood v. Exchange Bank, 190 U. S. 294 (23 Sup. Ct. 751, 47 L. ed. 1061), carried to the Supreme Court of the United States from the Southern District of Georgia, the Supreme Court of the United States held: "A

court of bankruptcy has no jurisdiction to enforce, against the bankrupt's exemption, the rights of unsecured creditors whose evidences of indebtedness contain the waiver of homestead and exemption authorized by the State constitution and laws, by reason of the authority act of 1898 (30 Stat. at L. 544, chap. 541, U. S. Comp. Stat. 1901, p. 3418), to control exempt property, in order to set it aside, and thus exclude it from the assets of the bankrupt's estate to be administered." In the opinion in this case it was said: "The proceeding is remanded to that court, with directions to overrule the exceptions to the trustee's assignment of homestead and exemption, and to withhold the discharge of the bankrupt, if he be otherwise entitled thereto, until a reasonable time has elapsed for the excepting creditor to assert, in a State tribunal, his alleged right to subject the exempt property to the satisfaction of his claim."

In Isaac on Homestead Waiver it is said: "Contesting homestead does not estop creditor from asserting waiver. The question whether a homestead, when granted, would be subject to a particular lien was not only an improper question for determination on the application for a homestead, but could not be made, and if made could not prevent the grant. The court allows the homestead, leaving the matter of subjecting the property for future determination by a court of competent jurisdiction. That a creditor unsuccessfully contested the right of his debtor to the homestead did not estop him from setting up a waiver, for the reason that his right to make such waiver was not passed upon in the contest over the allowance of the homestead." This court held, in *Cutts* v. *Scandrett*, 108 *Ga.* 620 (34 S. E. 186): "When in its consideration of a case this court discovers from the record that a judgment has been rendered by a court having no jurisdiction of the subject-matter, that judgment will be reversed, although the record discloses that at an interlocutory state of the case a ruling to the effect that the court below did have such jurisdiction was made by a judge to whom the plaintiff's petition had been presented for preliminary action, and although this judgment was never set aside or reversed, but was practically acquiesced in by the judge presiding at the final trial, who himself rendered a judgment of like kind." In *Dix* v. *Dix*, 132 *Ga.* 630 (3) (64 S. E. 790), it was held: "If a court is wholly without jurisdiction of a given subject-matter, or power to pass upon issues in respect thereto, an attempted decision of issues on

that subject is invalid, and will not operate as res adjudicata in a subsequent suit concerning the subject-matter in a court of competent jurisdiction. It is rudimentary law that parties can not, by consent express or implied, give jurisdiction to a court; that as to the subject-matter the court is limited by the powers conferred upon it by law, and can not be given additional power or jurisdiction by consent of the parties or by waiver; but that as to the jurisdiction of the person, the point may generally be waived, so far as the rights of the parties are concerned, but not so as to prejudice the rights of third persons. Civil Code [1895], §§ 5079-5080. The language in the latter part of section 5079 does not mean that parties can confer upon a court, by agreement or waiver, jurisdiction as to a subject-matter. That section was a codification of the pre-existing law, and it has been declared that it was the same in effect after the adoption of the Code as before that time. *Suydam* v. *Palmer*, 64 *Ga.* 546, 548. In *Towns* v. *Springer*, 9 *Ga.* 130, it was held that 'A judgment rendered by a court without jurisdiction is a mere nullity, and may be so held wherever and whenever and in whatever way it is sought to be used as a valid judgment.' In that case a rule against the sheriff was issued by the superior court, based on an execution which was returnable to the inferior court; and it was held that the superior court had no jurisdiction of the subject-matter. In *Central Bank of Georgia* v. *Gibson*, 11 *Ga.* 453, it was held that 'When the court has jurisdiction of the person and subject-matter, and the defendant has some privilege which exempts him from the jurisdiction, he may waive the privilege, and in so doing will be bound by the judgment.' In *Raney* v. *McRae*, 14 *Ga.* 589 (60 Am. D. 660), it was said: 'Parties, by consent express or implied, can not give jurisdiction to the court, as to the person or the subject-matter. It may be waived, however, as to the person, so far as the rights of the parties themselves are concerned; but not so as to prejudice third persons.' See also *Bostwick* v. *Perkins, Hopkins & White*, 4 *Ga.* 47; *Adams* v. *Lamar*, 8 *Ga.* 83 (3). These cases were all decided before the adoption of the original Code, and show how the law was construed at that time. They are in substantial accord with the rulings in other jurisdictions."

"On a claim for exemption the only question which concerns the court of bankruptcy is whether the debtor is entitled to his exemption as *against general creditors* [italics ours]; and if such is the

case, the claim can not be denied because there are some creditors as against whom the claim of exemption could not be sustained." 7 C. J. 359, § 634. "An order of a bankruptcy court setting apart the exemptions of the bankrupt relates back to the time of the filing of the petition in bankruptcy, and is a judgment of that court that the property was exempt at that time; but it does not affect an existing lien on the property." 7 C. J. 361, § 640, citing Blood v. Munn, 155 Cal. 228 (100 Pac. 694); Courier v. King, 81 Vt. 285 (69 Atl. 873); Jackson v. Edwards, 136 Ga. 888 (68 S. E. 975). "A court of bankruptcy has no jurisdiction with respect to exemption of property except to set it aside to the bankrupt." 7 C. J. 362, § 642, citing 47 L. E. 1061, 125 Fed. 913, 57 L. E. 1306. "A court of bankruptcy has no jurisdiction to determine the existence or validity of a lien claimed by a creditor upon exempt property, or to enforce against exempt property the rights of creditors whose obligations or evidences of indebtedness contain a waiver of exemption, but the rights of creditors to subject the same to their debts must be determined in the State court." 7 C. J. 363, § 643. Counsel for plaintiff in error cites McBride v. Gibbs, 148 Ga. 380 (96 S. E. 1004), in support of the position that proving a claim in the court of bankruptcy and objecting to a homestead is an invitation to the bankruptcy court to apply the doctrine that he waived any lien that he might have. We do not agree in the construction placed upon the McBride decision by counsel; for the opinion in that case expressly declared that even though the property is sold by the bankruptcy court, the lien attaches to the fund, thereby permitting a creditor to follow any funds raised from the sale of any property on which he has a lien. Taylor Co. v. Williams, 139 Ga. 581 (77 S. E. 386), is distinguished by its facts from the case at bar. In Re Maynard, 183 Fed. 823 (2), which went up from the Northern District of Georgia, the court held: "Const. Ga. art. 9, sec. 1, par. 1 (Civ. Code 1895, sec. 5912), provides for an exemption of the property of every head of a family out of realty or personalty or both to the value in the aggregate of $1600; and the next section declares that no court or ministerial officer shall have jurisdiction or authority to enforce any judgment, execution, or decree against the property set apart for such purpose, including improvements, except for taxes, purchase money, etc. Held, that, so far as a bankrupt's exemptions under such act are concerned, the bankruptcy

court takes the property only for the purpose of setting it aside; it never becoming, except for that purpose, a part of the bankrupt's assets; and hence it was no objection that certain of the property claimed as exempt was subject to a lien for purchase-money, as such lien would follow the property and be enforceable against the same in the hands of the bankrupt, notwithstanding the bankruptcy proceedings." So we are of the opinion that the fact that the holder of a judgment based upon a homestead-waiver note appeared in the bankruptcy court and objected to the allowance of the homestead, and that the referee allowed the exemption over the objections, does not constitute res judicata as to the right of such judgment creditor to institute an equitable proceeding for the purpose of subjecting the homestead to the lien of her execution.

■ This court has often held that bankruptcy does not divest liens which have attached prior to bankruptcy, even within four months of the adjudication, as against all the world, and that the provisions of sec. 67f of the bankruptcy act are for the protection of the trustee in bankruptcy in the administration of such property as passes into his hands and is administered by him; and that since a homestead does not pass into the hands of the trustee and is not administered by him, the lien of a judgment based on a homestead-waiver note is not divested by an adjudication of bankruptcy. In *McKenney* v. *Cheney*, 118 *Ga.* 387 (45 S. E. 433), the court held: "1. Subsection f of section 67 of the national bankruptcy act of 1898 is applicable to cases of both voluntary and involuntary bankruptcy. 2. Where an exemption is set apart under the State law, the trustee in bankruptcy acquires no title to the exempt property. 3. Under the national bankruptcy act, the bankrupt court is without authority or power to administer property set aside as exempt under the constitution of this State. 4. The effect of 67f of the national bankruptcy act is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, in order that the property may pass to and be distributed among the creditors of the bankrupt. It is applicable only as against such trustee, and was designed to prevent preferences between creditors." Counsel for plaintiff in error rely upon the ruling of Mr. Justice Lamar in Chicago &c. R. *v.* Hall, supra; but it will be noticed that the Hall case differed from the case at bar in the very important particular,

to wit, that Hall had given no waiver of his exemption, whereas the case at bar concerned a judgment based upon a note waiving exemption of homestead. In the Hall case it was expressly held that "Section 67f does not defeat rights in exempt property acquired by contract or waiver of exemption; but where, as in this case, there has been no waiver, no rights can be acquired. Lockwood v. Exchange Bank, 190 U. S. 294 [supra], distinguished." Mr. Justice Lamar, in concluding his opinion in the Hall case, said: "The liens rendered void by § 67f are those obtained by legal proceedings within four months. The section does not, however, defeat rights in the exempt property acquired by contract or by waiver of the exemption. These may be enforced or foreclosed by judgments obtained even after the petition in bankruptcy was filed, under the principles declared in Lockwood v. Exchange Bank, 190 U. S. 294. But Hall did not waive his exemption." In the present case Mrs. Rosenthal had waived her exemption, and she therefore falls within the principle declared in the Lockwood case, supra, referred to by Mr. Justice Lamar.

In *Equitable Credit Co.* v. *Miller,* 164 *Ga.* 49 (2) (137 S. E. 771), Mr. Justice Gilbert, speaking for the entire court, said: " 'The effect of 67f of the national bankruptcy act is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him.' *McKenney* v. *Cheney,* 118 *Ga.* 387 (45 S. E. 433) ; *Spradlin* v. *Kramer,* 146 *Ga.* 396 (91 S. E. 409) ; *McBride* v. *Gibbs,* 148 *Ga.* 380 (96 S. E. 1004) ; *Coker* v. *Utter,* 152 *Ga.* 157 (108 S. E. 538)." In *Coker* v. *Utter,* 152 *Ga.* 157 (108 S. E. 538), the judgment (as in the present case) was rendered within four months of the adjudication of bankruptcy, and this judgment was based, as in the present case, upon a homestead-waiver note. The court held: "A lien creditor by proving his claim does not waive, nor is he estopped from asserting, his lien in a court of competent jurisdiction against the property which the court of bankruptcy has not the jurisdiction to administer for the benefit of creditors. *McBride* v. *Gibbs,* 148 *Ga.* 380 (96 S. E. 1004). . . The effect of § 67f of the national bankruptcy act of 1898 is not to void the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, in order that the property may pass to and be distributed among the creditors of the bank-

rupt. It is applicable only as against the trustee, and was designed to prevent preferences between creditors. A discharge in bankruptcy does not discharge the lien of a judgment obtained within four months prior to the adjudication of bankruptcy, upon a note waiving the homestead exemption allowed by the laws of this State upon lands set aside by the bankrupt court as exempt. *McKenney* v. *Cheney*, 118 *Ga.* 387 (45 S. E. 433). . . The request to review and overrule the case of *McKenney* v. *Cheney*, supra, is denied. While the ruling in that case may not be in harmony with all of the dicta in the case of C., B. & Q. Ry. Co. *v.* Hall, 229 U. S. 511 (33 Sup. Ct. 885, 57 L. ed. 1306), it is not necessarily in conflict with the decision in that case upon the issues actually involved, as in the present case the judgment sought to be enforced is based upon a promissory note containing a waiver of homestead, and it was otherwise in the case last cited." It is true Justice Atkinson dissented in the *Coker* case, but his dissent was not based on the proposition that bankruptcy did not divest the lien of a judgment obtained within four months of bankruptcy, which is the point now before us, but was based on the proposition that the bankrupt had obtained his discharge and the discharge killed the debt. In the case at bar the bankrupt has not obtained her discharge, and it is alleged in the petition that the plaintiff would apply for a stay of the discharge until this issue could be determined. From all the decisions it may be said that the true rule in Georgia is that if a judgment based on a homestead-waiver note is rendered at any time prior to an adjudication in bankruptcy, the lien of such judgment attaches to the homestead exemption, and the bankruptcy proceedings do not divest or affect the lien of such judgment. One who buys homestead property buys it subject to the superior lien given to the holder of such judgment. As this is the status of this case, and the homestead property here involved was subject to the duly recorded judgment which antedated the alleged conveyance from Mrs. Rosenthal to her daughter, Mrs. Weinstein, the lien was not divested, and must be held to be superior to the subsequent writing evidencing the sale.

The rights of the judgment creditor, based upon her homestead-waiver note, are superior to the rights of the holders of homestead-waiver notes which had not been reduced to judgment, upon the principle that the law favors the diligent, not the slothful. In

*Bell* v. *Whitehead,* 115 *Ga.* 589 (41 S. E. 1002), it was held: "The law protects the vigilant. If Mrs. Daniel had taken the precaution to have a proper waiver from Duke when he signed the guardian's bond, she could have claimed this fund, for her judgment was older than his. But Whitehead, or the persons under whom he claims, were vigilant and took a waiver, and they therefore have a priority over Mrs. Daniel in the distribution of this fund. See *Moore* v. *Frost,* 63 *Ga.* 296; *Kirby* v. *Reese,* 69 *Ga.* 452; *Dean* v. *Feely,* 69 *Ga.* 804." Again, in *Coker* v. *Utter,* supra, the parties occupied the identical positions that they do in the present case. Utter obtained judgment on March 5, 1919, on two notes waiving exemption rights. Within four months the debtor was adjudicated a bankrupt. Subsequently a homestead was set apart to the bankrupt, and thereafter Hackney, also holder of a homestead-waiver note, but without a judgment lien, sought to subject the property to his homestead waiver. The court rendered judgment that "the $1445 now in the hands of J. H. Lumpkin, as receiver of J. E. Coker, is subject to the execution in favor of A. B. Utter." It will be noted that Utter was a judgment creditor, and as to this the Supreme Court ruled that "the court below did not err in rendering the judgment complained of."

*Judgment affirmed. All the Justices concur.*