CITIZENS SAVINGS BANK, INC., a corporation of the State of Delaware, for the use of J. Gordon Govatos, v. SOLOMON ASTRIN, IDA ASTRIN, HARRY Y. ASTRIN, MORRIS ASTRIN, BESSIE ASTRIN and MARY COHEN.

CITIZENS SAVINGS BANK, INC., a corporation of the State of Delaware, for the use of J. Gordon Govatos, v. SOLOMON ASTRIN, IDA ASTRIN, MORRIS ASTRIN, BESSIE ASTRIN and MARY COHEN (2 cases).

452

(*September* 15,1948.)

CAREY, J., sitting.

*John S. Walker* for the plaintiffs.

*Harry Rubenstein* for the defendant, Solomon Astrin.

Superior Court for New Castle County, Nos. 148, 149 and 150, September Term, 1947.

CAREY, J.

The nature and purpose of the present proceedings must be kept in mind. By § 4765, Sec. 12. Ch. 132, Revised Code of Delaware 1935, the lien of a judgment upon real estate expires at the end of ten years following the day of entry or the date when payment became due, whichever is the latest, unless extended by agreement filed, or by appropriate action started, before the end of that period. After the expiration of ten years, the lien can only be renewed (in the sense of being revived) by scire facias sur

judgment. § 4768, Sec. 15, Ch. 132, Revised Code of Delaware 1935. When a proceeding is instituted for that purpose, the writ of scire facias is not an original writ but is a continuation of a proceeding already begun. 2 Woolley on Delaware Practice 889. Furthermore, the judgment entered upon the scire facias proceeding is not a new judgment but is merely a revival of the lien of the original one. The new proceeding establishes no new debt or obligation against the defendant; it simply revives or reestablishes the right of the plaintiff to sue out execution for the purpose of collecting the debt evidenced by the old judgment. 2 Woolley on Delaware Practice 904.

The present actions, then, are not an attempt to obtain new judgments by which the discharged bankrupt could be held personally responsible. Moreover, by the stipulation, they are not intended to subject any property acquired by him after adjudication to a possible liability. The sole purpose is to enable the plaintiffs to proceed against a property which was bound by the original liens and which, according to the plaintiff's theory, continued to be so bound after the adjudication until those liens expired by the passage of the statutory interval of time. Whereas the bankrupt's discharge terminated his personal legal liability for the debts, it had no bearing upon any liens which were not destroyed by his adjudication. 1 Collier on Bankruptcy (14th Ed.) 1660. Judgments in favor of the plaintiffs in the pending causes would not, therefore, constitute a refusal to give full faith and credit to the judgment of discharge, provided the liens survived the adjudication. On the other hand, if the liens were nullified by the adjudication, they cannot now be revived.

From the agreed facts, it appears that the only property involved in this litigation is the real estate owned by the bankrupt and his wife as tenants by the entirely.

In Delaware, this type of ownership retains most, if not all, of its common law features. "Each spouse owns the whole while both live; neither can sell any interest except with the other's consent, and by their joint act; and at the death of either the other continues to own the whole, and does not acquire any new interest from the other. There can be no partition between them. From this is deduced the indivisibility and unseverability of the estate into two interests, and hence that the creditors of either spouse cannot during their joint lives reach by execution any interest which the debtor had in land so held. * * * when land is held by the entireties a judgment against the husband is not during the joint lives of the tenants of the estate a lien on the land, because his possibility of survivorship cannot be taken in execution." *Hurd v. Hughes,* 12 *Del.Ch.* 188, 109 *A.* 418, 419. For this reason the trustee of Solomon Astrin's bankrupt estate could not, and did not, take any title to this property, the ownership of which continued where it had been before his adjudication, towit, in him and his wife.

Section 67, sub. f of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. f as it existed prior to 1938, contained the following provisions:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt."

The use of the words "null and void" in this section caused some courts to consider that all liens were automatically nullified when obtained by judicial proceedings

within four months, regardless of the kind of property involved, subject to attack in any type of proceeding or by any party interested. See *Greenberger v. Schwarts*, 261 *Pa.* 265, 104 *A.* 573. This theory found some support in certain statements made in a few Federal Supreme Court decisions, particularly in the case of *Chicago, B. & Q. R. Co. v. Hall*, 229 *U.S.* 511, 33 *S.Ct.* 885, 57 *L.Ed.* 1306. However, in that case, although the Court held that a bankrupt debtor could assert the invalidity of such a lien, it expressly stated that Section 67, sub. f does not defeat rights in exempt property acquired by contract or by waiver of the exemption.

A contrary theory was advanced by other Courts, which construed the words "null and void" as actually meaning "voidable". They held that the section was intended for the benefit of the general creditors and did not avoid liens as against all the world but only as against the trustee and those claiming under him . See *Pigg & Son v. United States*, (10 *Cir.*) 81 *F.* 2d 334; *Frazee v. Nelson*, 179 *Mass.* 456, 61 *N.E.* 40, 88 *Am. St. Rep.* 391; 8 *C.J.S. Bankruptcy*, § 245, *p.* 904. In some instances, it was said that Section 67, sub. f, affects only liens upon property which may pass to the trustee for the benefit of the estate. Thus, in *Rosenthal v. Langley*, 180 *Ga.* 253, 179 *S.E.* 383, 100 *A.L.R.* 45, where a lien had been obtained upon homestead property by virtue of a homestead waiver note within four months, it was held that the lien was not avoided since the homestead did not pass to the trustee.

An indication of the attitude of the Federal Supreme Court concerning these two conflicting theories was given when that Court denied certiorari in the *Rosenthal* case, 295 *U.S.* 720, 55 *S.Ct.* 916, 79 *L.Ed.* 1674. A deliberate choice between them was announced by that Court in 1940 in *Fischer v. Pauline Oil & Gas Co.*, 309 *U.S.* 294, 60 *S.Ct.* 535,

539, 84 *L.Ed.* 764. In addition to adopting the second theory as being sound, the Court stated that "the lien is not avoided for the benefit of the bankrupt save as to his exempt property or nullified as respects other lienors or third parties." The decision mentioned with approval the former ruling in Chicago, B. & Q. R. Co. v. Hall, *supra.* In other words, although a bankrupt may assert the invalidity of the lien as to his exempt property, rights of others in that exempt property are not defeated by the Act.

The bankrupt here relies heavily upon the Maryland case of *Ades v. Caplin,* 132 *Md.* 66, 103 *A.* 94, *L.R.A.*1918*D,* 276, decided in 1918. There the facts were very similar to those presented here. After quoting Section 67, sub. f, the Court held that the lien of the judgment was avoided by the adjudication, since it found nothing in the peculiar characteristics of a tenancy by entirety to prevent the nullification of that lien. The decision was apparently predicated upon an assumption that the act automatically avoids all liens obtained within four months prior to adjudication by judicial proceedings, and that the fact of nullification may be asserted by the bankrupt against anyone as to property not passing to his trustee. The underlying philosophy of that case seems therefore not to be in strict accord with the principles later adopted by the Federal Supreme Court in the Fischer case, *supra.*

The parties before me agree in their briefs that it is proper to treat the entireties property as exempt property would be treated, in so far as the demands of the present case are concerned. This method of approach was followed in *Echelbarger v. First National Bank,* 211 *Ind.* 199, 5 *N. E.2d* 966. But Section 67, sub. f does not defeat all rights in exempt property, as we have seen.

The purpose of section 67, sub. f is to prevent preferences between creditors by providing that non-exempt prop-

erty shall be free of certain liens created within four months in order that it may be distributed among the general creditors of the bankrupt. Rosenthal v. Langley, *supra*. The section was never intended to be used for the purpose of shielding assets from creditors. Thus, even after adjudication, Federal Courts have held up a bankrupt's discharge in order to allow a creditor to obtain for the first time a lien against property not passing to the trustee by bringing suit in a State Court. *Lockwood v. Exchange Bank*, 190 *U.S.* 294, 23 *S. Ct.* 751, 47 *L. Ed.* 1061; *Phillips v. Krakower*, (4 *Cir.*) 46 *F. 2d* 764.

In view of the purpose and intent of the Bankruptcy Act in general, and in particular the meaning of section 67, sub. f as interpreted by the United States Supreme Court, the reasoning of Ades v. Caplin, *supra*, is not persuasive. In my opinion, the liens held by the plaintiffs against the property in question were not avoided under Section 67, sub. f by the adjudication; the bankrupt's discharge did not affect those liens; and the plaintiffs are now entitled to have them revived as to said property.

Judgment will accordingly be entered for the plaintiffs in each case.