Joan MITCHELL, Plaintiff,

v.

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Defendant/Third Party Plaintiff,

v.

Robert R. MITCHELL, Third-Party Defendant.

Court of Chancery of Delaware, New Castle County.

Submitted Feb. 19, 1982.

Decided July 1, 1982.

Robert E. Daley, Daley, Erisman & van-Ogtrop, Wilmington, for plaintiff.

Alan W. Behringer, Richards, Layton & Finger, Wilmington, for Wilmington Trust Co., defendant and third-party plaintiff.

James F. Kipp, Trzuskowski, Kipp, Kelleher & Pearce, P. A., Wilmington, for Robert R. Mitchell, third-party defendant.

HARTNETT, Vice Chancellor.

This is the decision after trial on an action brought for the purpose of extinguishing a mortgage lien on plaintiff's real estate. Defendant, Wilmington Trust Company, the holder of the mortgage, filed a counterclaim against plaintiff to set aside a conveyance of the real estate in question as being in violation of the provisions of 6 *Del. C.* § 1307, relating to fraudulent transfers, and brought a third-party action against the plaintiff's former husband, Robert R. Mitchell, alleging fraud in connection with the execution of the original mortgage. A default judgment was entered against Robert R. Mitchell and after considering the evidence adduced at trial as well as the legal theories advanced by the parties, I find for the plaintiff and against the defendant.

I

The facts are for the most part undisputed. From the evidence I find: About November 4, 1964, plaintiff Joan E. Mitchell and Third-Party Defendant Robert R. Mitchell, her then husband, purchased a parcel of real estate in Kingsridge, Wilmington, Delaware. The Mitchells took title to the property as tenants by the entireties.

Thereafter, on December 3, 1973, Mr. Mitchell executed and delivered to Wilmington Trust Company a mortgage on the real estate in order to secure a loan in the amount of $18,000. On the date of his execution of the mortgage, Mr. Mitchell brought with him to the bank a woman whom he represented to be Mrs. Mitchell, but who in fact was not. Mr. Mitchell and the imposter executed the loan documents, including the mortgage and an underlying note, in the presence of a Wilmington Trust Company loan officer.

In March of 1976 the loan became delinquent. Mrs. Mitchell, however, did not become aware of the delinquent loan and the fact that it was secured by a mortgage on the real estate in question until October 11, 1976, at which time she received a letter from a Vice-President of Wilmington Trust Company informing her of the delinquency. Immediately thereafter, Mrs. Mitchell contacted Wilmington Trust Company through her attorney and informed them of the forgery.

Earlier, on October 6, 1976, Mr. Mitchell conveyed his interest in the property by deed to Mrs. Mitchell. The deed was recorded on this same date. Prior to this time, Mrs. Mitchell had decided to obtain a divorce from Mr. Mitchell and the conveyance was intended, based upon legal advice, to be in settlement of all of Mr. Mitchell's obligations to Mrs. Mitchell arising out of the marriage. On December 20, 1976, Mrs. Mitchell filed a complaint for a divorce which was granted and became final on February 3, 1977.

II

In essence, plaintiff's argument is that the lien of the mortgage executed by Mr. Mitchell should be extinguished on the grounds that it was a nullity as to her

interest in the property because of the forgery, as well as a nullity as to her and her husband's joint interest in the property because the property was owned by them as tenants by the entireties. Plaintiff contends that according to this common law concept of property ownership, one spouse cannot encumber title to property owned as tenants by the entireties without the consent of the other spouse.

Wilmington Trust Company does not dispute the fact that the signature on the mortgage document was a forgery and that it, therefore, has no claim on the one-half interest of Mrs. Mitchell. Rather, it only claims that the mortgage lien is still valid as to the one-half interest in the property which formerly belonged to Mr. Mitchell. Wilmington Trust Company relies upon the common law principle that a husband could voluntarily alienate or encumber property owned by him as a tenant by the entirety, during his lifetime, but subject to defeasance in the event his wife survived him. Thus, Wilmington Trust Company contends that if the husband could conditionally encumber the property the subsequent divorce of the plaintiff, which automatically changed the nature of ownership from a tenancy by the entireties to a tenancy in common, caused the mortgage lien, as to Mr. Mitchell's interest, to vest in favor of Wilmington Trust Company.

In further support of this theory, Wilmington Trust Company relies on the after-acquired title doctrine. According to this doctrine, a grantor who executes a deed purporting to convey land to which he has no title or to which title is defective, will be estopped from denying his deed, when afterwards he acquires good title to the land. In such a case, title is said to vest in the grantee by operation of law. Wilmington Trust Company also contends that this doctrine prevails regardless of whether the grantor conveyed title by fraud or mistake. Wilmington Trust Company, therefore, contends that the divorce cured, by operation of law, any defects in the mortgage lien as to the one-half interest of Mr. Mitchell.

Wilmington Trust Company also claims that the conveyance which occurred prior to the Mitchells' divorce whereby Mr. Mitchell conveyed his interest in the property to the plaintiff should, in any event, be set aside. In essence, Wilmington Trust Company claims that the conveyance was fraudulent in that it violated 6 *Del. C.* § 1307 (Uniform Fraudulent Conveyances Act § 7) which provides:

"§ 1307. *Conveyance made with intent to defraud.*

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Thus, Wilmington Trust Company contends that irrespective of plaintiff's lack of knowledge, her husband's fraudulent act of procuring a signature purported to be his wife's on the mortgage rendered the transfer of his interest in the property to the plaintiff void as a fraudulent conveyance.

Plaintiff's response to this latter claim is twofold. First, plaintiff contends that the conveyance was supported by valid consideration, namely, the release of her husband's marital obligations. Secondly, plaintiff contends that because she had no knowledge at the time of the conveyance of her husband's fraudulent act, that 6 *Del. C.* § 1307 cannot bar the conveyance of his one-half interest to her.

### III

The first issue to be addressed, therefore, is what rights, if any, arose in favor of Wilmington Trust Company as a result of the mortgage fraudulently procured by Mr. Mitchell. Because the property was owned by the Mitchells as tenants by the entireties it is necessary to first consider the ramifications of this type of ownership.

In Delaware, this theory of estate ownership retains most, if not all, of its common law features. *Citizens Savings Bank v. Astrin,* Del.Super., 61 A.2d 419 (1948). Thus, "each spouse owns the whole while both live; neither can sell any interest ex-

cept with the other's consent, and by their joint act; and at the death of either the other continues to own the whole, and does not acquire any new interest from the other. There can be no partition between them. From this is deduced the indivisibility and unseverability of the estate into two interests, and hence that the creditors of either spouse cannot during their joint lives reach by execution any interest which the debtor had in land so held. * * * When land is held by the entireties a judgment against the husband is not during the joint lives of the tenants of the estate a lien on the land, because his possibility of survivorship cannot be taken in execution." *Hurd v. Hughes,* Del.Ch., 109 A. 418, 419 (1920). See also, *Heitz v. Sayers,* Del.Super., 121 A. 225 (1923) and *In Re Giant Portland Cement Co.,* Del.Ch., 21 A.2d 697 (1941). Recently, in *Steigler v. Insurance Co. of North America,* Del.Supr., 384 A.2d 398 (1978), the Delaware Supreme Court reaffirmed that the common law features of a tenancy by the entirety remain essentially intact. Moreover, the enactment of the Married Woman's Act, 13 *Del. C.* § 311 et seq., had no effect on the creation of an estate by the entirety except that it did materially affect the husband's common law right to manage and enjoy his wife's property during her lifetime. *In Re Giant Portland Cement Co., supra; Heitz v. Sayers, supra; Kunz v. Kurtz,* Del.Ch., 68 A. 450 (1899).

■ Applying these principles to the present case it is clear that Mr. Mitchell, as one of the tenants by the entireties, was unable to encumber the property during the joint lives of the tenants without first obtaining the consent of Mrs. Mitchell. However, this is not to say that some right, although inchoate, was not created in favor of Wilmington Trust Company. Indeed, an inchoate lien, incapable of execution during the joint lives of the tenants, did arise in favor of Wilmington Trust Company.

In *Carlisle v. Parker,* Del.Super., 188 A. 67 (1936), a judgment creditor of a husband petitioned the court to share in the surplus proceeds of a foreclosure sale on certain real estate owned by the husband and his wife as tenants by the entireties. The court denied the judgment creditor's petition on the ground that the proceeds from a sale of entirety property, as personal property, retains the same incidents of ownership as did the real estate from which it stems. As such it rendered the judgment creditor's lien incapable of execution.

■ In its reasoning the court distinguished and limited the rationale of certain Pennsylvania decisions which had at least impliedly set forth the theory that a creditor of one of the spouses owning entirety property did in fact have "some sort of lien." Thus, the Delaware court provided:

"In *Fleek v. Zillhaver,* 117 Pa. 213, 12 A. 420, an estate by entireties existed; a judgment was obtained against the husband alone; subsequently husband and wife joined in a mortgage; the wife died; execution was issued on the judgment against the husband and the land sold. The Court held that the judgment against the husband alone, which incapable of enforcement during their joint lives was a lien on the expectancy of the husband, and that on the death of the wife that this judgment became a first lien against the husband and took priority over the mortgage.

In *Beihl v. Martin,* 236 Pa. 519, 84 A. 953, 42 L.R.A. (N.S.) 555, the court limited the *Fleek* Case but did not overrule it. The doctrine of the *Fleek* Case has been the subject of vigorous criticism. (Citations omitted.)

With the doctrine of the *Fleek* Case we do not agree. We do not think there can be such a thing as a lien, properly speaking, on any interest in real property where such interest could not be conveyed, mortgaged, assigned or otherwise dealt with by the one against whom the lien is sought to be imposed.

In *Beihl v. Martin* it was conceded that the lien against the husband was not enforceable until after the death of the wife. *This result, we think, proceeds from the fact that upon the death of the wife the existing judgment against the*

*husband then, for the first time, becomes a lien and does not proceed from any theory of stay of execution by operation of law."*

(Emphasis added.) 188 A. 70.

Given the rationale in *Carlisle* it is clear that a mortgage granted by one tenant by the entirety is not void upon execution, but remains inchoate subject to a divestment in the event the spouse who was not a party to the mortgage survives the mortgagor. Likewise it becomes a valid lien on the entire property if the spouse who executed the mortgage survives the spouse who did not execute the mortgage. The mortgage lien, however, does not vest in any manner until the termination of the tenancy by the entirety. As such, it is incapable of being executed upon during the joint lives of the tenants and susceptible of being diminished in priority by subsequent joint mortgages as well as being defeated, absent fraud, by a subsequent joint deed prior to the death of one of the tenants or their divorce.

## IV

■ A similar result could be reached by application of the after-acquired title doctrine. See *Columbian Carbon Company v. Knight*, Md.Ct.App., 207 Md. 203, 114 A.2d 28 (1955). While this doctrine is primarily applied to defective deeds, I consider its rationale equally applicable to defective mortgages. Thus, assuming no valid intervening valid conveyance preceded the Mitchells' divorce, this doctrine would have caused the mortgage to vest by operation of law, for the first time, upon the termination of the tenancy by the entirety by the divorce.

## V

It is well settled in Delaware that after a divorce property formerly held as tenants by the entirety devolves as a matter of law into a tenancy in common. *Wife W. v. Husband W.*, Del.Super., 307 A.2d 812 (1973), *aff'd.*, Del.Supr., 327 A.2d 754 (1974); *Sussex Trust Co. v. Johnson*, Del.Super., 90 A.2d 679 (1952); *In re Cochran's Real Estate*, Del.Ch., 66 A.2d 497 (1949); *Carlisle v.*

*Parker*, supra. The pivotal issue, therefore, is whether Wilmington Trust Company can set aside the conveyance which preceded the divorce, whereby Mr. Mitchell, in settlement of his marital obligation, transferred his undivided one-half interest in the entirety property to the plaintiff pursuant to 25 *Del. C.* § 309, which permits conveyances between tenants by the entireties. If this conveyance cannot be set aside, it would take priority over the inchoate mortgage lien and effectively preclude any right Wilmington Trust Company might have in the property because of its mortgage.

As indicated earlier, Wilmington Trust Company relies on 6 *Del. C.* § 1307 which provides in pertinent part that a "conveyance made . . . with actual intent . . . to defraud either present or future creditors, is fraudulent . . ." The record clearly demonstrates Wilmington Trust Company's status as a creditor of Mr. Mitchell, the grantor. And, as a result of Mr. Mitchell's default, the underlying debt was due and owing in a sum certain. Thus, if actual intent to defraud is established, Wilmington Trust Company may set aside the conveyance pursuant to 6 *Del. C.* § 1309 (Uniform Fraudulent Conveyances Act § 9). This statute provides:

"§ 1309. *Rights of creditors whose claims have matured.*

(a) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

(1) *Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim;* or

(2) Disregard the conveyance and attach or levy execution upon the property conveyed.

(b) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."
(emphasis added)

It is well settled in this State that this Court has at least concurrent jurisdiction to hear actions which arise under this statute. *Getty Refining & Marketing v. Park Oil, Inc.,* Del.Ch., 385 A.2d 147 (1978); *E. M. Fleischmann Lumber v. Resources Corp. Int'l,* Del.Ch., 98 A.2d 506 (1953).

■ The subjective prerequisite of "actual intent" referred to in 6 *Del. C.* § 1307 has been construed to mean that of the grantee as well as the grantor. *Richards v. Jones,* Del.Ch., 142 A. 832 (1928). The burden of persuasion as to this element remains throughout the trial with the proponent of the position that the conveyance was fraudulent. *United States v. West,* D.Del., 299 F.Supp. 661 (1969). Once, however, the creditor has established, as here, a confidential relationship such as that which exists between a husband and wife, the burden of going forward shifts to the party seeking to sustain the transaction to demonstrate its fairness. *Faircloth v. Rash,* Del. Super., 373 A.2d 870 (1977).

The reason behind this approach was succinctly stated in *Richards v. Jones,* supra. Thus, "where a transaction alleged to be fraudulent takes place between parties of near blood relationship, it will be more closely scrutinized than if it were between strangers, because where such intimacy of relationship exists fraud is easily practiced and effectively concealed." See also, 37 C.J.S., *Fraudulent Conveyances* § 252, p. 1085. Applying this standard to the present case, the burden of going forward rested with the plaintiff to introduce evidence of the fairness of the consideration paid sufficient to dispel the presumption of fraud. *Faircloth v. Rash,* supra; *United States v. West,* supra; *Sahley v. Tipton Co.,* D. Del., 40 F.R.D. 495 (1966).

Wilmington Trust Company's reliance on *Richards v. Jones,* supra, for its claim that the presence or absence of a valuable or an adequate consideration is immaterial to the Court's determination of a fraudulent conveyance, is misplaced. The *Richards* decision merely provides that where there is actual intent to defraud by both the grantor and grantee, the fairness of the consideration becomes irrelevant. However, if the conveyance is for a consideration, the creditor must still show that the debtor and the grantee knowingly participated in a fraudulent conveyance.

■ Plaintiff here has adequately demonstrated the fairness of the consideration supporting the conveyance in question. As a general rule, a conveyance is said to be supported by fair and valuable consideration where a husband conveys property to his wife in settlement of her property rights or in release of other marital obligations when the conveyance is done so in contemplation of a divorce which the wife subsequently obtains. 37 C.J.S., *Fraudulent Conveyances* §§ 169–172, pp. 987–990, citing *Marine Midland-New York v. Batson,* N.Y. Supr., 70 Misc.2d 8, 332 N.Y.S.2d 714 (1972). There was no evidence adduced at trial warranting a departure from this general rule, nor was there any evidence raising doubt as to plaintiff's good faith in entering into the transaction in issue. Indeed, the record is clear that plaintiff was not aware of the loan and the mortgage until receipt of Mr. Snowden's letter which occurred subsequent to the conveyance.

The remainder of Wilmington Trust Company's argument regarding the evidence is predicated on the assumption that plaintiff carried the burden of persuasion as to the entire transaction. As such, it attempts to point out deficiencies in the plaintiff's evidence. The burden of persuasion to show sufficient grounds for setting aside the transfer, however, always rested with Wilmington Trust Company. Plaintiff's burden was limited to establishing the fairness of the consideration, which she did. As a result, I find that Wilmington Trust Company has failed to establish that the plaintiff knowingly participated in the fraudulent conveyance. The conveyance, therefore, cannot be set aside.

## VI

In summary, I have found that although Wilmington Trust Company possessed an inchoate lien in the property in question, it was subsequently defeated by Mr. Mitchell's

conveyance of his interest in the property to the plaintiff while the property was still owned by them as tenants by the entireties. I, therefore, find that the plaintiff is entitled to an extinguishment of the mortgage lien. She may submit a proposed order.