THOMAS B. RICHARDS,

*vs.*

ISAAC ERNEST JONES and LOUISE J. JONES.

*New Castle, Aug.* 8, 1928.

*Ayres J. Stockley*, of the firm of Hastings, Stockley and Morris, for complainant.

*James R. Morford*, of the firm of Marvel, Layton and Morford for defendants.

THE CHANCELLOR. On February 8, 1927, the defendant, Isaac Ernest Jónes, while driving an automobile, collided with an automobile driven by the complainant. The complainant

suffered personal injuries. On the same day Jones was charged before a justice of the peace with the offense of having operated the automobile while intoxicated and was found guilty. He took an appeal. The disposition of the case on appeal is not disclosed by the record.

One week later, to-wit, February 15, 1927, Jones conveyed all the real estate he owned, consisting of an interest in four parcels, to his mother, Louise J. Jones, a defendant herein, for a recited consideration of one dollar.

On the day after the accident, notice was served on the attorney for Jones, who was engaged by him on an annual retainer to attend to his legal matters, that a claim for damages would be preferred against him because of the accident. Jones himself, however, says that he had no notice of the complainant's claim until some time in August, 1927, when suit for damages was filed. But he admits that several days after the accident he was informed some one had been injured and that he always knew there was the possibility of a suit against him. Indeed, without any evidence whatever upon the question, it would be difficult to believe anything other than that not only Jones but as well his mother with whom he lived and who was aware of the fact of the collision and of the charge against her son of having driven the car while intoxicated, knew or had every reason to believe that a claim for damages was likely to be asserted by the injured person or persons. For the court to assume that the likelihood of a suit against Jones was not present in his mind as well as in the mind of his mother, the grantee in the deed, would be out of all reason and in defiance of what even the most contemptuous appraisement of human intelligence would concede. I take it as a fact in the case, therefore, that, when the deed was executed by Jones to his mother, they both knew that a possible claim in tort would be thereby hindered or defeated in its collection.

That one whose claim is in tort is a creditor within the meaning of the "Act Concerning Fraudulent Conveyances," etc. (30 *Delaware Laws*, *c*. 207), notwithstanding the claim has not yet been reduced to judgment, is clear from the definition of the term "creditor" given by the act itself. A creditor is a "person having any claim, whether matured or unmatured, liquidated or

unliquidated, absolute, fixed or contingent." The Court of Errors and Appeals in the New Jersey case of *Babirecki, et al., v. Virgil, et al.*, 97 *N. J. Eq.* 315, 127 *A.* 594, 39 *A. L. R.* 171, approved the following language expressed by it in a prior opinion:

"* * * The statute extends its protection to all persons having a valid cause of action arising from torts as well as from contracts. * * * When his claim has thus been liquidated [by reduction to judgment] and established as a lawful debt, he may attack a voluntary conveyance made after the liability arose and before suit was brought, to defeat his debt, on the theory that such judgment when once obtained relates back and establishes a debt as of the time when the original cause of action accrued."

The complainant in this case, then, notwithstanding his claim rested in tort and suit therefor had not been instituted until after the conveyance was made, is a creditor within the meaning of the act, the tort having been committed prior to the conveyance.

The act provides in *Section* 10 thereof as follows:

"*Section* 10. (Rights of Creditors Whose Claims Have Not Matured.) Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may.

"(a) Restrain the defendant from disposing of his property,

"(b) Appoint a receiver to take charge of the property,

"(c) Set aside the conveyance or annul the obligation, or

"(d) Make any order which the circumstances of the case may require."

The particular relief prayed for in this suit is, in addition to the usual prayer for injunctive relief, that the conveyance may be canceled and set aside, and for such other and further relief as to the Chancellor may seem just.

Was the conveyance in this cause fraudulent as to the complaining creditor so as to entitle him to the relief sought? In defining fraudulent conveyances, the act *inter alia* provides:

"*Section* 4. (Conveyances by Insolvent.) Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

\* \* \*

"*Section* 7. (Conveyance Made with Intent to Defraud.) Every con-

veyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

The complainant contends that a case of actual intent to defraud is made out so as to render *Section 7* applicable to his case. I take it that the actual intent referred to by that section must be such as motivated not only the grantor but as well the grantee, and that in obedience to the familiar principle which courts of equity have long recognized (see *Colbert v. Sutton et al.*, 5 *Del. Ch.* 294), where there is an actual intent, the question of the presence or absence of a valuable or an adequate consideration is immaterial.

Was then the conveyance by Jones to his mother made with actual intent to defraud the complainant? I have already adverted to the fact that both of them are to be regarded as having knowledge of the complainant's likely assertion of a claim for damages. Another pertinent observation at this point is that the conveyance stripped Jones of his entire real estate holdings. Not only so, but title to his automobile was transferred to his mother. This, to be sure, is explained by the fact that the mother paid the bill for repairing it and the damaged car was worth no more than the repair bill. The fact remains however that the title to the car came to his mother and he continued to use it just as he had before. The result, after the deed was made and the automobile transferred, was that Jones was denuded of everything he owned. He was totally insolvent. The deed, if the testimony of Jones and his mother be taken as true, recited a false consideration. Instead of the nominal consideration of one dollar, named at the time and before the complainant had actually instituted suit, being the true consideration, the claim is now made after judgment obtained by the complainant that the real consideration was $3,702.67. Why, if the consideration was in fact as now claimed, the parties, in the face of the knowledge they must have had as to the possibility of a claim by the complainant, chose to name what on the surface showed in substance no consideration whatever for the property, is hard to explain except on the theory that at the time the parties regarded the

transaction as one of a voluntary character. More will be said concerning the matter of consideration at a later place. For the moment it is enough to say that the defendants insist that the nature and character of the consideration had been agreed upon by the parties for some time prior to the accident; that in large part it was for a past due indebtedness; that the nature of the past indebtedness had been explained to the lawyer who drew the deed; that some time before the accident this same lawyer had been instructed to write the deed and put through the conveyance; and that it was solely because of his delay that the conveyance was not made prior to the accident and therefore prior to any possible claim by the complainant. It is of great significance that these important facts are vouched for only by the parties in interest. The lawyer, though he is a member of the Chancery bar, was not called by the defendants, nor was his absence accounted for. I do not see how the complainant could be expected to call him as a witness, as is argued by the solicitor for the defendants, nor do I see how, if he had been called by the complainant, the protection of his professional privilege could have been penetrated. The failure of the defendants to call this most important witness must be taken strongly against them in obedience to the familiar rule on the subject.

It has been held by some courts and not, it seems to me, without reason, that, where a transaction alleged to be fraudulent takes place between persons of near blood relationship, it will be more closely scrutinized than if it were between strangers, because where such intimacy of relationship exists fraud is easily practiced and effectively concealed. 27 C. J. 641, 642. Where a conveyance of all his property has been made by a son to his mother, as here, upon an apparently nominal consideration but upon a subsequently claimed adequate consideration, and the claimed consideration is a very long past due one touching the existence of which a disinterested member of the bar can speak but is not called by his clients, and when the deferred conveyance comes opportunely at a time when its effect is to delay or defeat a threatening claim for a one-week old tort—under such circumstances there are sufficient badges of fraud displayed to call upon the parties to explain. The burden is on them to satisfy the court

that the transaction is an innocent one. In the following cases the circumstances which placed the burden on the defendants, though not of course on all fours with those found in the pending case, were yet no more pointed in their accusation of fraud than are those found here: *Riker v. Gwynne*, 129 *App. Div.* 112, 113 *N. Y. S.* 404; *Reeves & Co. v. Estes*, 124 *Ala.* 303, 26 *So.* 935; *Hoboken Bank v. Beckman, et al.*, 36 *N. J. Eq.* 83, reversed on grounds not material here by 37 *N. J. Eq.* 331.

Now, how do the defendants seek to explain away these accusing circumstances? Their explanation revolves of course around the claimed consideration of $3,702.67 for the deed. Let us examine the evidence touching that critical point in the case. Of this amount, $2,556.67 represents a debt owing by the son to the mother for past-due board for a period of nine years and ten months at the rate of five dollars per week. That there was some discussion in the family, particularly on the part of the other son and daughter of the defendant Louise J. Jones, concerning the duty of her son Isaac, the defendant, to pay board can hardly be doubted, not only because the evidence so indicates but as well because it was but natural. The defendant, Isaac, who was living with his mother was a grown man. He had been Register of Wills for his county and it was but natural that his absent brother and sister should have insisted that he pay some board to the aging mother who was a widow. And so the matter naturally was one of family discussion. I am impressed by the fact, however, that never throughout the nine years and ten months that he lived at home did the defendant pay his mother a single dollar for board, notwithstanding that during four years of that time he held a lucrative public office. It would seem that if his sense of obligation was so strong as to cause him to strip himself of all his property in order to discharge a board bill owed to his mother, the same sense of obligation would have been so ingrained in his nature as to prompt an occasional payment to her as the board was being received. It is a suspicious circumstance that he was moved to make the payment in a large lump immediately after that particular time when he was in an automobile collision with a charge against him of driving when intoxicated. Another peculiar, not to say incredible, circumstance

connected with the mother's bill for board is this, that though it covers a period of nine years and ten months, yet for a good part of that time the father of the family was living and was the head of the house. He died in 1925. So that we have this situation, which is unexplained, namely, the mother claims to have boarded her son for nine years and ten months, when during about six years and ten months of the time the board money, if any, was due to the father.

It is not pretended that a contract for board was made by the mother and son at the outset. Certainly for a long length of time the son lived at home and there was no existing agreement that he should pay board. When the board was being received by the son, not only was nothing paid therefor, but there was no concurrent contract by which a debt therefor was accumulating. I cannot escape the conclusion that the mother, out of a spirit of indugelnce, allowed her son to live with her without charge or agreement on his part to pay, and that when the possibility of a judgment against him loomed up the mother and son for the first time conceived the idea of regarding what had been gratuitously granted in the past as founded in a contract.

In addition to the alleged unpaid debt for board, which constitutes by far the major portion of the alleged consideration, the defendants undertake to show by evidence that money loaned to the extent of $1,156.02 also composed a part of the consideration. This sum is made up of money in the amount of $376.62 claimed to have been loaned by the mother to the son prior to February 15, 1927, the date of the deed, and $779.40 claimed to have been paid by her to her son after the date of the deed from February 28, 1927, to October 1, 1927, inclusive. The $376.62 above referred to was paid to Jones by his mother by three checks dated respectively October 15, 1925, January 20, 1927, and January 14, 1927. No note or other written evidence of indebtedness was given by Jones for these alleged loans. The other sum of $779.40 was paid after the deed was executed and covered, as claimed by the solicitor for the defendants, deferred payments by the mother of the balance of the agreed consideration for the deed. Yet Jones, if further consideration money was due him, took nothing in the way of security or note from his mother to protect or evi-

dence the unpaid balance. In view of the fact that Jones had a brother and sister it seems strange that, in selling, as claimed, his entire real estate to his mother, his lawyer should have omitted to protect him by properly securing him for the unpaid balance of the purchase price, especially in view of the manifest manner in which the brother and sister regarded him as having imposed too much on the mother's resources. The answers make the same claim as does the solicitor for the defendants to the effect that the consideration embraced in part a sum past due for money loaned and about $800 to be paid in the future. Yet when Jones and his mother testified, their statements upon this point in the case are so greatly confused that one is in doubt whether they ever, according even to their own statements, had any definite agreement touching any future payments on account of the consideration for the deed. I will not say that the son owed the mother nothing for money paid both before and after the conveyance. I am forced, however, to say with respect to the major item in the alleged consideration, viz., the alleged unpaid board bill, that under the evidence I am unable to accept it as proved. It was of course necessary for the defendants to show not only some consideration but a "fair consideration" in order to support the deed as against the complainant's claim. The attempted use of a past due debt for board was resorted to, in my opinion, for such a purpose. And the setting up of a claim founded on that untenable basis is another circumstance that discounts the pretended bona fides of the parties to the deed.

Rejection of the claim for unpaid board as a part consideration, leaves as the only possible consideration the cash payments amounting, as before stated, to the total of $1,156.02. But if these payments did in fact constitute the consideration, yet they cannot save the grantee from the consequences of a decree in favor of the complainant if there was an actual intent to defraud (*Section* 7 of the act). That there was such an actual intent is shown by all the facts and circumstances and the reasonable inferences to be deduced therefrom.

The relief which may be granted to a creditor whose claim has been delayed or hindered by a fraudulent conveyance, such as the conveyance in this case is found to have been, may take

any one of several forms. In this case I am of the opinion that the most appropriate decree would be one which sets aside the conveyance in so far as is necessary to afford the complainant a remedy for the collection of his judgment. Accordingly the decree will establish the complainant's judgment, with its costs and interest from its date, as a lien on the conveyed premises, and direct payment of the same by the defendant, Louise J. Jones, on or before a specified date. In default of payment as directed, the decree will reserve to the complainant the right to make further application for an order directing a sale of the lands conveyed, or any part thereof sufficient to satisfy the amount found to be due and unpaid.

Decree accordingly with costs on the defendants.