GEORGE K. MURPHY and SALLIE L. MURPHY v. T. B. O'TOOLE, INC., a corporation of the State of Delaware, and GEORGE-BAYARD, INCORPORATED, a corporation of the State of Delaware.

*(February* 29, 1952.)

CAREY, J., sitting.

*David A. Eastburn* and *John M. Bader* for plaintiffs.

*John VanBrunt* (of Killoran and VanBrunt) for defendants.

Superior Court for New Castle County, No. 212, Civil Action, 1950.

Additional facts appear in the Court's opinion.

CAREY, Judge:

The question for determination is whether the record discloses the existence of a genuine issue as to any material facts warranting submission of the case to a jury. As will be seen, defendants' affidavits, if true, fully refute any imputation of fraud. Plaintiffs, therefore, have the duty of disclosing the existence of evidence justifying a trial of the issue. 3 *Barron and Holtzoff* 88.

The parties agree that a statement of intent to perform an act, when in truth no such intent exists, constitutes a misrepresentation of fact and as such may furnish the basis for an action in deceit, provided the other necessary elements are present. The plaintiffs here contend that evidence of non-performance of the act is alone sufficient to justify a jury in inferring lack of truth in the prior statement of intent. They argue that, upon proof of non-performance, the matter must be left to the jury regardless of what explanation may be offered, for the jury may disbelieve the explanation, even though no rebuttal thereof be made. It would follow, presumably, that summary judgment in favor of a defendant could never be granted, whenever his non-performance of the promised act has been established.

I should be reluctant to hold that proof of non-compliance with a promise is never, under any circumstances, sufficient to justify an inference of fraud. Instances when non-performance could be explained by no other reasonable hypothesis may easily be visualized. Usually, however, something more is required. 24 *Am. Jur.* 133, *Sec.* 287; 37 *C. J. S., Fraud*, § 116, *p.* 440; see cases collected in 51 *A. L. R.* 163; 68 *A. L. R.* 648; 91 *A. L. R.* 1306; 125 *A. L. R.* 891. Ordinarily, in the absence of additional circumstances, it will be found that a mere failure to perform is as consistent with an honest intent as with a dishonest one.[1] When that is true, a *prima facie* case is not

---

[1] We are not here concerned with the effect of certain peculiar relationships, such as fiduciaries.

made out. "Where the circumstances relied upon as indicating fraud are of a doubtful nature, or are susceptible of an innocent interpretation, or are calculated to raise but a bare suspicion of fraud in regard to the person charged therewith, they will not amount to sufficient evidence to establish the fact". *Kent Co. R. Co. v. Wilson,* 5 *Houst.* 49, (56). See also *Griffin v. Star Pub. Co.,* 1 *Boyce* 169, 74 *A.* 1072; *Mears v. Waples,* 3 *Houst.* 581, 619; 24 *Am. Jur.* 133, *Sec.* 286; 37 *C. J. S., Fraud,* § 115, *p.* 438. These principles are not limited to causes arising out of commercial transactions, as plaintiffs suggest, for they rest not merely upon the needs of commerce, but rather upon two broader bases: (1) the usual rule that the burden of proof rests upon him who alleges; (2) the legal presumption of good faith and honesty. 2 *Jones Civil Evidence (Horwitz ed.) Sec.* 192. Obviously, mere proof of defendants' failure to demolish the dwelling promptly after it became vacant is not enough to sustain plaintiffs' burden, because the failure could have been caused by any one of a number of bona fide reasons. It would therefore be incorrect to allow a jury to infer fraud from this fact alone. *Williams v. DeFabio,* 3 *N. J. Super.* 182, 65 *A.* 2d 858, cited by plaintiffs is not inconsistent with this holding. In that case, as the statement of facts points out, there was evidence to the effect that an agreement had been made by the owners to lease the property to a new tenant before the plaintiff moved out. The finding of fraud was not based merely upon non-compliance with a promise.

Plaintiffs contend, however, that there are additional circumstances in this case, aside from non-compliance, which justify submission to a jury. Accordingly, it becomes necessary to review briefly the material allegations of the affidavits and depositions.

The dwelling in question was located on a tract of land owned by George. It was decided to use the property for the erection of a large housing project consisting of 92 apartment buildings containing 920 apartments at a cost of several million

dollars, the project to be known as Clifton Park Manor. Don A. Loftus and Associates, Inc., entered the picture as builder, and Permanesque Homes of Delaware, Inc., was employed as the construction contractor. The Federal Housing Administration agreed to make a mortgage loan of nearly six million dollars. The plans and specifications were drawn by Albert D. Lueders, a registered architect, and were subject to approval by F. H. A. They also had to be approved by the Regional Planning Commission of New Castle County. O'Toole closely cooperated in the handling of numerous details as agent of George.

Defendants' affidavits indicate that, at all times from the very beginning, the dwelling occupied by plaintiffs was regarded as expendable. They planned to demolish it for several reasons. It was in a bad state of repair. Its value was not great. It was so located with respect to the proposed apartments as to constitute an eyesore. A considerable amount of blasting and excavation work had to be done very close to it, thereby rendering occupancy hazardous. Under the first site plans drawn up, it was located in the bed of a proposed access road. Under later plans, while it was no longer in the actual bed of this road, it nevertheless constituted a violation of a 25-foot setback therefrom required by the Regional Planning Commission. It is still scheduled for demolition before final completion of the project. All these facts supplied the reasons for the securing of a Certificate of Eviction.

Several days after plaintiffs vacated the dwelling, Permanesque sent Walter W. Sezna to Wilmington as construction superintendent on the project. He was told by Mr. Loftus, President of the builder corporation, that the dwelling was to be demolished at once. Sezna objected to doing so immediately, recommending that it be used for construction headquarters and office. Loftus consented to this recommendation (without consulting George or O'Toole) and it was followed.

According to Sezna's affidavit, some two months later it was discovered that certain materials were being stolen from the job.

Moreover, Sezna had not been able to find a house for his family to occupy. For these reasons, he suggested to his employer that he be permitted to occupy the dwelling with his family. The suggestion was accepted on condition that he occupy it at his own risk. A number of repairs, made necessary in part by damage caused by blasting and other operations on the project, were performed at Sezna's own expense. He then occupied it, rent free, and still did so at the time of argument on this motion. During part of his occupancy, he experienced considerable trouble with the electric current and the water and sewer pipes because of the construction operations going on. The road to the house was impassable at times; the blasting work often caused stones and debris to be blown against the house and once caused the entire ceiling in a bedroom to fall. He avers that the dwelling, although undemolished, was nevertheless untenantable in the usual sense of the word for a considerable period of time and was occupied by him only because of his unusual situation.

The foregoing statements have been gleaned from affidavits signed by Sezna, the construction superintendent, who was and is employed by the contractor; Don A. Loftus, President of the builder; Mr. Lueders, the architect; and Robert L. Holliday, Jr., Vice President of O'Toole. Plaintiffs took the deposition of Fred E. Britton, Secretary-Treasurer of the contractor corporation. His testimony disputes nothing of importance contained in defendants' affidavits. Plaintiffs have also filed their own affidavit which, in my opinion, conflicts with what has been said above only in a few immaterial and minor respects.

In the argument before me, counsel has called attention only to one fact or circumstance which, taken in conjunction with the failure to demolish, they contend raises an issue for the jury. This contention is based upon the change in the proposed location of the access road. As indicated above, it is clear from defendants' own affidavits that the architect had, prior to the date the certificate was granted, drawn up a revised site plan in which the location of this road was so changed that the

dwelling was 18 feet away from it rather than directly in its path. This revised plan was given tentative approval by the Regional Planning Commission on August 31, 1949. One of the conditions of tentative approval was that a twenty-five foot set-back be provided for all buildings facing this road. Final approval of this plan was received three or four days before the plaintiffs moved out. Plaintiffs now suggest that the above circumstances would warrant a jury in finding that defendants had changed their intention prior to vacation of the building. Their argument, however, assumes that the construction of the access road according to the original site plan was the only reason for demolishing the dwelling, whereas it is alleged in defendants' affidavits, and is not contradicted by anything in the record, that this was only one among several reasons why defendants planned to tear it down. Moreover, even though the house was no longer in the actual road bed, it nevertheless was a violation of the setback requirement. There is nothing to indicate that this change of plan was in any way responsible for the failure to demolish promptly. I cannot feel that this one circumstance adds enough weight, in the light of the situation as a whole, to justify a finding of fraud by a jury.

Defendants' affidavits demonstrate very definitely the existence of an intention to demolish the house promptly, and point out the reasons why that intent was not carried out. Plaintiffs have not shown the existence of any material evidence raising an issue for the jury. At most, the circumstances which they rely upon do no more than create a "bare suspicion of fraud", which, as the cited authorities hold, would not justify a verdict in plaintiffs' favor.

My conclusion is that defendants are entitled to judgment as a matter of law upon the record made. Their motion for summary judgment will be granted.