**UNITED STATES of America,
Plaintiff,**

v.

**John E. WEST and Mary C. West,
Defendants,**

**Douglas H. West, by his guardian ad litem Mary C. West, Intervenor.**

**Misc. 88-1-329.**

United States District Court
D. Delaware.

June 2, 1969.

Alexander Greenfeld, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Howard T. Ennis, Georgetown, Del., for defendants and intervenor.

## OPINION

LATCHUM, District Judge.

On August 15, 1963, the Small Business Administration (SBA) loaned J. E. West, Inc., a Delaware corporation, $12,-000.00,[1] secured by a corporate judgment note, a mortgage on 4.89 acres of real estate located in Broad Creek Hundred, Sussex County, Delaware and a chattel mortgage.[2] The corporate indebtedness was further secured by a guaranty agreement, dated August 15, 1963, signed by John Emory West and his wife, Mary Catherine West, in their individual capacities. On December 31, 1964, while the SBA loan was still outstanding, John Emory West and Mary Catherine West conveyed certain properties, known as 553 East Fourth Street and 534 Cooper Street, Laurel, Delaware, which they owned as individuals, to their son, David L. West. After J. E. West, Inc. defaulted on the loan, the United States, on June 29, 1966, entered a judgment by confession in this court on the corporate note against J. E. West, Inc. On June 30, 1966 the United States also entered in this proceeding a judgment by confession in the amount of $7,261.22 against John Emory West and Mary Catherine West on the guaranty agreement.[3]

On September 1, 1966, David L. West conveyed the two properties received from his parents to his brother, Douglas H. West. Nearly two years later, on May 24, 1968, the United States caused a writ of *fieri facias* to be issued in these proceedings directing the United States Marshal to seize and attach the properties at 553 East Fourth Street and 534 Cooper Street, Laurel, Delaware. Thereafter, on December 4, 1968, the United States caused a writ of *venditioni exponas* to be issued, directing the Marshal to sell the seized properties at public sale to satisfy the judgment against Mr. and Mrs. West. Pursuant to the writ, the Marshal advertised the properties to be sold at public sale on January 22, 1969.

Prior to the sale, on January 20, 1969, Douglas West,[4] as the record owner of the properties involved, intervened and petitioned the court for a stay of the sale. The court entered an order on January 23, 1969 temporarily staying the sale and ordering a hearing to be held on January 31, 1969 on the issue raised by the petition of Douglas West, *i. e.* the fraudulency of the conveyance by John Emory West and Mary Catherine West to David L. West. Although the hearing was ordered in conjunction with the stay order, it was intended and acknowledged by the parties to be an evidentiary hearing at which the government would prove the fraudulency of the conveyance in order to have the transaction set aside. Thus, this opinion will determine whether or not the government

---

1. SBA disbursed $10,000.00 of the loan on August 15, 1963 and the remaining $2000.00 on January 27, 1964.

2. The real estate mortgage was recorded in the Recorder of Deeds office in Sussex County on August 15, 1963 and the chattel mortgage on August 20, 1963.

3. This judgment was also filed in the Prothonotary's office for Sussex County on July 14, 1966 (J.D.1966A, Page 25) in accordance with the provisions of 28 U.S.C. § 1962 and 10 Del.C. § 4736.

4. A guardian ad litem was appointed for Douglas West since he is a minor.

is entitled as a creditor of Mr. and Mrs. West to have the conveyance to David L. West set aside as fraudulent, though title is now in Douglas H. West, and proceed with its plans to sell the properties upon execution process.

Initially, it is clear that, in the absence of any applicable federal statute, the Delaware statutory and case law is controlling. Wolf v. Eblen, 101 F.2d 469, 472 (C.A.6, 1939); *see* Winter v. Welker, 174 F.Supp. 836, 843 (E.D.Pa.1959). The government argues in its briefs that the conveyance in question is fraudulent under 6 Del.C. § 1304,[5] a verbatim adoption of section 4 of the Uniform Fraudulent Conveyance Act, which states:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

In order to rule that the conveyance was fraudulent this court must find (1) that it was made without fair consideration and (2) that the debtor was insolvent or was rendered insolvent by the conveyance. The actual intent of the parties to the conveyance is of no consequence since this section establishes "an external test of constructive or legal fraud * *", McLaughlin, Application of the Uniform Fraudulent Conveyance Act, 46 Harv.L. Rev. 404, 407 (1933), as contrasted with the subjective "actual intent * * * to defraud" requirement of section 1307. 6 Del.C. § 1307.

In opposition to the government's effort to have the 1964 conveyance set aside as fraudulent the intervenor has argued in his brief that since the three-year statute of limitations has expired as to any legal remedy to which the government might be entitled, 10 Del. C. § 8106, this court must bar the government's equitable action to set aside the

conveyance on the theory that "equity follows the law." Wise v. Delaware Steeplechase & Race Ass'n, 28 Del.Ch. 532, 45 A.2d 547, 552, 165 A.L.R. 830 (Sup.Ct.1945). However, "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its [sovereign or governmental] rights." United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 125, 39 S.Ct. 407, 63 L.Ed. 889 (1919). In this case the government is in the position of a creditor which is striving to protect "public money" previously obtained by a corporation through an SBA loan on which the debtors are guarantors. It is, thus, "acting in its governmental capacity" and cannot be barred by the applicable statute of limitations or laches. See Chesapeake & Delaware Canal Co. v. United States, *supra* at 126, 39 S.Ct. 407.

In an action to set aside a fraudulent conveyance the burden is on the creditor to prove that the conveyance was fraudulent. *See* Stearns v. Los Angeles City School Dist., 244 Cal.App.2d 696, 53 Cal.Rptr. 482, 509, 21 A.L.R.3d 164 (1966); Palestroni v. Jacobs, 18 N.J. Super. 438, 87 A.2d 356, 357 (1952). However, it is the law in Delaware and elsewhere that

> where a transaction alleged to be fraudulent takes place between persons of near blood relationship, it will be more closely scrutinized than if it were between strangers, because where such intimacy of relationship exists fraud is easily practiced and effectively concealed.

Richards v. Jones, 16 Del.Ch. 227, 142 A. 832, 835 (1928); Cooch v. Grier, 30 Del. Ch. 255, 59 A.2d 282, 287 (1948). While the Delaware cases which have articulated this requirement of a careful examination of family transactions specifically

---

5. The government also contends, but does not press the point, that there was an actual intent to defraud creditors by the conveyance in question. 6 Del.C. § 1307.

In view of my finding regarding constructive fraud under 6 Del.C. § 1304, however, it is not necessary to discuss or decide the question of actual fraud.

involved allegations of actual fraud under Section 1307, in the absence of any indication in the decided cases to the contrary, it can be assumed that the Delaware courts would adhere to this same policy in considering section 1304 conveyances and that this would be reflected in the burden of proof. Rather than requiring the creditor to establish by a preponderance of the evidence both that the conveyance was not for fair consideration and that the debtor was insolvent at the time of the conveyance or rendered insolvent by the conveyance, it is anticipated that the Delaware courts would rely upon one of two prevalent rules regarding such family transactions: (1) that a conveyance by a debtor, when proven to have been voluntary, is presumed fraudulent unless the defendant (intervenor here) "rebuts it [the presumption] with evidence *tending to show* that the donor's remaining property was sufficient to pay his debts," 1 Glenn, Fraudulent Conveyances and Preferences § 270 at 462–63 (rev.ed.1940) (Emphasis added); or (2) that once a family transfer by a debtor is proven the defendant (intervenor) must show by *clear and satisfactory evidence* the solvency of the debtor at the time of the conveyance *or* the fairness of the consideration paid in order to dispel the presumption of fraud. Winter v. Welker, 174 F.Supp. 836, 843 (E.D.Pa.1959). The first rule requires proof by the creditor that the transferor was indebted at the time of the conveyance and that the conveyance was voluntary, a gift. This rule, however, appears to have general applicability to *all* section 4 cases under the uniform act and is not simply limited to proving a *prima facie* case against a family transaction. On the other hand, "[s]ince family collusion by a debtor is so easy to execute and so difficult to prove * * *" the second rule which allows the creditor to simply establish that the transferor was indebted at the time and that the transferee was a close relative of the debtor in order to sustain his burden of proof appears to be more reasonably and particularly applicable to

family transactions under section 4. Iscovitz v. Filderman, 334 Pa. 585, 589, 6 A.2d 270, 272 (1939) (involving section 7 of the uniform act); *see* Sahley v. Tipton Co., 40 F.R.D. 495, 496 (D.Del. 1966).

Although it is unclear whether Delaware courts would adopt the second standard of proof mentioned above, in the opinion of this court Delaware would certainly require the defendant (intervenor) to show the solvency of the debtor at the time of the conveyance to avoid a finding of fraudulency once the creditor has established that the conveyance was to a close relative and was unsupported by fair consideration. Smith v. Wilder, 270 Ala. 637, 120 So.2d 871, 878 (1960); Arthur & Boyle v. Morrow Bros., 131 Md. 59, 101 A. 777, 780, L.R.A.1918A, 400 (1917); *see* Richards v. Jones, 16 Del.Ch. 227, 142 A. 832, 835 (1928). A reasonable basis for such a presumption and shifting of the burden of going forward with the evidence is recognition by the courts of "the notorious tendency of the spouses [and other close relatives] to aid each other in enjoying secretly reserved property interests and to be generous to each other before they are just to creditors." McLaughlin, Application of the Uniform Fraudulent Conveyance Act, 46 Harv.L.Rev. 404, 428 (1933).

In any event the government, as the creditor in this case, has established on the basis of the record that the conveyance in question was not for a fair consideration, as that term is used in section 1304. The deed between John Emory and Mary Catherine West and David L. West recites a consideration of "one dollar * * * and other valuable and lawful considerations," but Mrs. West testified at the hearing that she and her husband did not request or receive *any* consideration from their son, David, in return for the properties conveyed. The intervenor argues in his brief, however, that "natural love and affection" formed the basis for the conveyance and that this is "good consideration" for an executed contract. Section 1303 requires

"fair consideration" which is deemed to be given "[w]hen in exchange for \* \* [the debtor's] property, \* \* \* as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied \* \* \*." 6 Del.C. § 1303. Since "the question of fair consideration as it pertains to an alleged fraudulent conveyance must be determined from the standpoint of creditors \* \* \*", Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351, 354 (1963), it is clear that no "fair equivalent" is exchanged when the conveyance is simply for natural love and affection. The creditor's interest will not be protected since the debtor's property has departed without any fair equivalent taking its place. The cases have uniformly held that such a conveyance is purely voluntary. Doerschuk v. Wiseman, 181 S.W. 2d 789, 792 (Mo.App.1944); Terre Haute Brewing Co. v. Linder, 233 Iowa 359, 7 N.W.2d 16, 18 (1943).

Since the creditor in this case has satisfactorily proven the absence of fair consideration in the questioned family transaction, a *prima facie* case of constructive fraud under section 1304 has been established and the only question remaining for the court to decide is whether or not the intervenor has presented sufficient evidence to rebut the presumption that the debtors, who are jointly and severally liable on the guaranty, were insolvent at the time of the conveyance or were rendered insolvent by that transaction.[6] See Glenn, Fraudulent Conveyances and Preferences § 271 (rev. ed.1940).

The record in this case with regard to the evidence of the financial condition of the debtors at the time of the conveyance is now complete. The court has before it three primary sources of information on this matter: (1) the testimony adduced at the two evidentiary hearings, (2) a financial statement filed by Mr. and Mrs. West with the SBA dated December 31, 1964, and (3) the statement of all property of the bankrupt contained in a Debtor's Petition of Mr. and Mrs. West dated October 3, 1968 and filed with this court in a bankruptcy proceeding. From all of this the court is simply unable to draw any rational conclusion about the solvency or insolvency of either of the debtors at the time in question.

There are a number of inconsistencies between certain financial data contained in testimony at the hearings and that contained in the financial statement or the bankruptcy petition. Mary Catherine West testified to the ownership of a number of parcels of real estate with improvements at the time in question, but the exact nature of this ownership was not made clear, *i. e.* whether they were solely or jointly owned. She offered layman's appraisals of the value of these properties, but her estimations were supported by the testimony of an experienced real estate broker in only two instances. The testimony concerning the liabilities existing against these properties was sometimes definitive and precise but it was also sometimes speculative and unreliable. Mrs. West's testimony about the existence of debts which were unrelated to her real estate interest was vague and uncertain. In sum, the testimonial and documentary evidence concerning the financial status of Mary Catherine West at the time in question is so replete with inconsistency, uncertainty, and unreliability as to leave the court with no alternative, short of bald conjecture, but to rule that the intervenor has failed to rebut the presumption of insolvency arising under section 1304 from the government's proof of a conveyance by a debtor to a close relative for less than fair consideration by "clear and satisfactory evidence" or even by evidence merely "tending" to show solvency of the debtor at the time of the conveyance.

6. Under the uniform act, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." 6 Del.C. § 1302(a).

Even more significant in this regard is the fact that the record contains virtually no information about the financial status of John Emory West. Mr. West testified at the first hearing, but he did not relate any significant information to the court as to his solvency at the end of 1964. He did not appear at the second hearing and Mrs. West acknowledged that she was unable to testify to the extent of her husband's indebtedness, if any, at the time in question. She did state that he was engaged in a house moving business with Jack Ridgeway at that time and that they owned some equipment related to that business, but it was their son, Douglas, who took the stand to give more specific details about the business. Douglas testified that the business involved several trucks and a station wagon, but he did not know whether the vehicles belonged to the corporation or were owned individually. He stated that the business also required wood timbers worth between $80 and $130, an undisclosed number of steel beams estimated to cost $150 each, and several dollies costing $100 to $150 each. Aside from this rather general, imprecise information about the business assets, Douglas was unable to apprise the court of the nature or extent of his father's interest in the property or his indebtedness, if any, in either his personal or his business affairs.

■■■■■ The government has clearly established a *prima facie* case of fraud under section 1304 and the intervenor has not rebutted the presumption that Mr. and Mrs. West were insolvent at the time of the conveyance or were rendered

insolvent by it. Thus, section 1304 is fully applicable to the conveyance in question.[7]

■■■■■ Since the intervenor, Douglas West, is a purchaser of the property in question from the fraudulent grantee, David West, he is subject to having the conveyance set aside and to any other remedies which would normally be available to the defrauded creditor just as though the property was still in the possession of the fraudulent grantee, unless he is a bona fide purchaser for valuable consideration without notice of the fraud. 6 Del.C. § 1309(a); Davis v. Hudson Trust Co., 28 F.2d 740, 743 (C.A. 3, 1928), cert. den. 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565 (1929); Iscovitz v. Filderman, 334 Pa. 585, 6 A.2d 270, 272 (1939); Mears v. Waples, 3 Houst. 581, 8 Del. 581 (1868). It is incumbent upon the intervenor to satisfy the court that he was a bona fide purchaser for value without either actual or constructive notice of the fraud. *See* Cancilla v. Bondy, 353 Pa. 249, 44 A.2d 586, 588 (1945); *cf.* Nagel v. Farmers Exchange, 64 S.D. 363, 266 N.W. 722 (1936).

■■■■■ The deed between David West and Douglas West for the properties in question, dated September 1, 1966, recites consideration in the amount of $2,000.00. One of the properties was listed on the 1964 financial statement as having a market value of $8,500.00 subject to a mortgage with $5000 outstanding.[8] Mrs. West testified at the second hearing that another parcel was worth $3,500. However, Douglas West testified

---

7. From the testimony adduced at the first hearing it is quite apparent that although legal title to the property in question was conveyed to their son, David, Mr. and Mrs. West actually retained possession of some or all of the property. They continued to reside on the property and to collect rent from tenants, though this was done ostensibly on behalf of their son. They also mortgaged some of the property in 1965 to obtain an automobile loan. Finally, in the Debtor's Petition dated October 3, 1968 they listed all of the properties as part of their assets,

though title was acknowledged to be in the name of Douglas West. Though not conclusive evidence of fraud, these facts disclose a "badge of fraud" which would normally give rise to a presumption of fraud. See 37 C.J.S. Fraudulent Conveyances §§ 92, 187–191. They are mentioned here only to indicate that there is some collateral support for the conclusion that the conveyance was fraudulent.

8. At the second evidentiary hearing Mrs. West testified that this property was worth $7,000.

at the first hearing that he paid David only $100 for the three properties. While adequacy of consideration is not normally questioned since a purchaser need only give valuable consideration to qualify for bona fide purchaser status, Carter Oil Co. v. McQuigg, 27 F.Supp. 182, 190 (E.D.Ill.1939), aff'd, 112 F.2d 275 (C.A. 7, 1940); Dennis v. Smith, 186 Kan. 539, 352 P.2d 405, 410 (1960), it is the general rule that a person who purchases property for grossly inadequate consideration is not a bona fide purchaser. Asisten v. Underwood, 183 Cal.App.2d 304, 7 Cal.Rptr. 84, 87 (1960); McAnally v. Panther, 26 S.W. 2d 478, 480 (Tex.Civ.App.1930). Consideration of $100 for three pieces of real estate, which were apparently valued at over $10,000 less than two years beforehand is certainly grossly inadequate. For this reason alone the defendant has failed to establish himself as a bona fide purchaser from the fraudulent grantee. But, furthermore, Douglas West has not shown that there was nothing about the transaction with his brother to put him on notice of the fraudulent nature of the earlier conveyance from his parents as to raise a duty to inquire as to that fact. See Cancilla v. Bondy, 353 Pa. 249, 44 A.2d 586, 588 (1945). From the nature of the relationships of the parties and from the amounts of consideration, both stated and actual, involved in the two conveyances, Douglas West was certainly put on notice and incurred a duty to inquire into the propriety of the conveyance from his parents to his brother, David, with regard to the rights of his parents' creditors.

Douglas West has not satisfied this court that he was a bona fide purchaser for value from David West without notice of the fraudulent nature of the conveyance by which David obtained the properties. Therefore, Douglas stands in the shoes of the actual fraudulent grantee and is properly subject to having the conveyance set aside by the government.

Finding the evidence in the record as stated above, and in view of the strict rules of evidence which are applied to family transactions under section 4 of the Uniform Fraudulent Conveyance Act, 6 Del.C. § 1304, I conclude that a constructively fraudulent conveyance occurred which must be set aside in favor of the plaintiff.

Present an order in accordance with this opinion.