Marvin FAIRCLOTH, Jr., Plaintiff,

v.

Donald RASH et al., Defendants and Third-Party Plaintiffs,

v.

ELJIM AGENCY, a Delaware corporation, et al., Third-Party Defendants and Third-Party Plaintiffs,

v.

INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Third-Party Defendant.

Superior Court of Delaware, New Castle.

Submitted March 22, 1977.

Decided April 4, 1977.

Richard P. S. Hannum, of Prickett, Ward, Burt & Sanders, Wilmington, for Fireman's Fund, subrogee in the name of Marvin Faircloth, Jr.

Nicholas H. Rodriguez and William D. Fletcher, Jr., of Schmittinger & Rodriguez, Dover, for Marvin Faircloth, Jr., individually.

N. Maxson Terry, Jr., of Terry, Terry & Jackson, Dover, for Eljim Agency.

F. Alton Tybout and Richard W. Pell, of Tybout & Redfearn, Wilmington, for Ins. Co. of North America.

TAYLOR, Judge.

Fireman's Fund Insurance Company, suing as subrogee in the name of Marvin Faircloth, Jr. [Fireman's Fund],[1] obtained judgment against Richard Rice Trailer Company, Inc. [Rice] in the amount of $73,-

---

1. Since Fireman's Fund is the real party in interest as plaintiff, the name Fireman's Fund will be used when referring to plaintiff.

615. Pursuant to execution process upon that judgment, certain property of defendant corporation was sold at Sheriff's sale. The issue before the Court is whether the proceeds of that sale should be paid to Fireman's Fund.

Fireman's Fund's judgment was entered May 21, 1975. Defendant appealed the judgment to the Supreme Court which dismissed the appeal and affirmed the judgment on October 6, 1975. Execution was issued on the judgment December 1, 1975.

Marvin Faircloth, Jr., in his individual right [Faircloth], obtained from defendant certain financing statements which were duly recorded prior to Fireman's Fund's execution. One financing statement covering various equipment was dated and recorded May 5, 1975; another financing statement covering certain motor vehicles was recorded October 14, 1975; and a financing statement covering all accounts receivable and contract rights due defendant was recorded October 17, 1975. Faircloth contends that he is entitled to the proceeds of the Sheriff's sale because the recording dates of his financing statements were prior to the execution by Fireman's Fund. Fireman's Fund contends that the financing statements given by defendant to Faircloth violate the Fraudulent Conveyances Act, 6 Del.C. Ch. 13, and should not be given effect.

■ 6 Del.C. § 1304 applies to a conveyance made or an obligation incurred without a fair consideration if the person is or will be rendered insolvent. § 1301 defines conveyance to include "lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." It is clear that this type of transaction, namely, the giving of a financing statement by the debtor must meet the test of the Fraudulent Conveyances statute. The test is whether the conveyance was made or obligation incurred without fair consideration.

■ 6 Del.C. § 1303 defines fair consideration as existing when the property or obligation "is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." It is clear that under the statute an antecedent debt can constitute fair consideration to the extent that such debt is supportable in the light of the relationship existing between debtor and creditor. The fact that a conveyance may give a preference to one of the debtor's creditors over another creditor will not invalidate the conveyance if the fair consideration test is met. 37 *C.J.S.* Fraudulent Conveyances § 235, p. 1058; 37 *Am.Jur.2d* Fraudulent Conveyances § 87, pp. 770–2.

■ Fireman's Fund's status as holder of a judgment against Rice qualifies as a creditor under the Fraudulent Conveyances Act. 6 *Del.C.* § 1301(3). Hence, it is entitled to have Faircloth's security position tested under the Fraudulent Conveyances Act.

■ Faircloth owned the land on which Rice conducted its business. Faircloth was the president of Rice and owned 65% of the stock of that corporation. Faircloth occupied a fiduciary relationship toward Rice, *Bovay v. H. M. Byllesby & Co.*, Del.Supr., 27 Del.Ch. 381, 38 A.2d 808 (1944); *Guth v. Loft, Inc.*, Del.Supr., 23 Del.Ch. 255, 5 A.2d 503 (1939); *Speed v. Transamerica Corp.*, D.Del., 99 F.Supp. 808 (1951), aff'd 3 Cir., 235 F.2d 369 (1956); consequently, he must prove the fairness of the transaction. Cf. *Richards v. Jones,* 16 Del.Ch. 227, 142 A. 832 (1928); *United States v. West,* D.Del., 299 F.Supp. 661 (1969); 37 *C.J.S.* Fraudulent Conveyances § 250, p. 1083. I conclude that the standard which Judge Latchum applied in *West* is the correct Delaware standard and that it is applicable where the preferred creditor and the debtor stand in fiduciary relationship. The standard announced in *West* is found in the following quotation:

"(1) that a conveyance by a debtor, when proven to have been voluntary, is presumed fraudulent unless the defendant (intervenor here) 'rebuts it [the presumption] with evidence *tending to show* that the donor's remaining property was sufficient to pay his debts,' 1 Glenn, Fraudulent Conveyances and Preferences

§ 270 at 462–63 (rev.ed.1940) (Emphasis added); or (2) that once a family transfer by a debtor is proven the defendant (intervenor) must show by *clear and satisfactory evidence* the solvency of the debtor at the time of the conveyance *or* the fairness of the consideration paid in order to dispel the presumption of fraud."

Fireman's Fund points to certain badges of fraud as supporting its position that the burden of sustaining the validity of the financing statements rests upon Faircloth. Fireman's Fund points to the failure of Faircloth to assert his claim for rent until the arrearage had become substantial over a substantial period of time, the failure of Faircloth to produce precise pertinent details concerning the creation of the security interest, and the fact that this arose as an amicable relationship between Faircloth and Rice. These may properly be considered when in the evidentiary stage of this matter.

Since there has been no evidentiary hearing on this matter, the motion must be treated at this stage as on summary judgment. In this posture, the Court is not at liberty to resolve factual disputes or to draw inferences other than in the light most favorably to the nonmoving party. *Wagner v. Olmedo,* Del.Supr., 365 A.2d 643 (1976); *Mechell v. Palmer,* Del.Supr., 343 A.2d 620 (1975); *Murphy v. T. B. O'Toole, Inc.,* Del.Super., 8 Terry 99, 47 Del. 99, 87 A.2d 637 (1952); *Woodcock v. Udell,* Del.Super., 9 Terry 69, 48 Del. 69, 97 A.2d 878 (1953); *Jones v. Julian,* Del.Supr., 6 Storey 587, 56 Del. 587, 195 A.2d 388 (1963). There has been confusion as to what documents support Faircloth's contention of a leasing arrangement with Rice. In addition, recognizing the absence of arms length dealing between Faircloth and Rice, it may be appropriate to consider whether the rent alleged to have been agreed upon between Faircloth and Rice was fair and reasonable. *Johnston v. Green,* Del.Supr., 35 Del.Ch. 479, 121 A.2d 919 (1956); *Guth v. Loft,* supra; *Pierce v. Wahl,* Del.Supr., 32 Del.Ch. 465, 86 A.2d 757 (1952). Because of the above considerations, I conclude that there must be a factual determination based upon hearing or stipulated evidence to determine whether Faircloth's security position transcends the limitations of the Fraudulent Conveyances Act.

For the reasons set forth above, the motion must be denied at this stage. The attorneys should confer with the Court to establish the procedure for resolving the factual issues.

IT IS SO ORDERED.