Charles S. FOLTZ, et al., Plaintiffs,

v.

U.S. NEWS & WORLD REPORT, INC., et al., Defendants.

David B. RICHARDSON, et al., Plaintiffs,

v.

U.S. NEWS & WORLD REPORT, INC., et al., Defendants.

Charles S. FOLTZ, et al., David B. Richardson, et al., Plaintiffs,

v.

Mortimer B. ZUCKERMAN, et al., Supplemental Defendants.

Civ. A. Nos. 84–0447, 85–2195.

United States District Court, District of Columbia.

Aug. 7, 1986.

Alan Raywid, John D. Seiver, Susan P. Baxter, Frances T. Chetwynd, Margaret E. Haering, Cole, Raywid & Braverman, Washington, D.C., for plaintiffs in Civ. A. No. 84–0447.

Avis Black, Washington, D.C., for defendant-intervenor Save the Fund.

Leslie A. Nicholson, Jr., Marie N. Doland, Ralph A. Taylor, Jr., Hannah E.M. Lieberman, Thomas J. Catliota, Jonathan T. Cain, Washington, D.C., for defendants U.S. News, Madana Realty.

Lawrence Latto, William Galeota, Julie Melamud, Shea & Gardner, Washington, D.C., for defendant Profit-Sharing Plan.

Richard J. Wertheimer, Hadrian Katz, Edward Wolf, Washington, D.C., for defendants Directors.

Willis B. Snell, Willard K. Tom, Steuart H. Tomsen, Eric N. Miller, Washington, D.C., for defendant The American Appraisal Associates, Inc.

E. Roger Frisch, New York City, George A. Bangs and Joseph M. Butler, Rapid City, S.D., Raoul L. Carroll, Washington, D.C., for plaintiffs in Civ. A. No. 85–2195.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

### INTRODUCTION

On June 16, 1986, counsel for the plaintiffs in the above-captioned consolidated cases, *Foltz, et al. v. U.S. News & World Report, Inc., et al.*, and *Richardson, et al. v. U.S. News & World Report, Inc., et al.*, requested leave to file a supplemental complaint and to join supplemental defendants. The *Foltz* complaint, certified to proceed as a class action, was brought by former employees of U.S. News & World Report ("U.S. News" or "Company"), who separated from U.S. News during the period from 1974 through 1981. The *Richardson* plaintiffs are former U.S. News employees who left in 1982. Both groups of plaintiffs seek relief under the Employee Retirement Income Security Act of 1974 ("ERISA") and federal securities laws for what they allege

was wrongful and gross undervaluation of the retirement benefits that they received upon separation from the Company.[1] Their suits name as defendants U.S. News, former directors of the Company, the U.S. News Profit-Sharing Plan ("Plan"), the Madana Realty Company ("Madana"), and American Appraisal Associates, Inc., an independent appraisal firm.

In their Supplemental Complaint,[2] plaintiffs name two individuals as defendants, Mortimer B. Zuckerman and Fred Drasner. Mr. Zuckerman purchased U.S. News from its employee-shareholders in 1984. He was represented in those efforts by Mr. Drasner, an attorney and a former partner in the law firm of Shaw, Pittman, Potts & Trowbridge ("Shaw, Pittman").[3] That law firm has represented U.S. News since the early stages of this litigation. Plaintiffs charge in their Supplemental Complaint that Zuckerman, with the advice and counsel of Drasner, wrongfully transferred assets out of U.S. News in order to render it judgment-proof in the event that liability was assessed against it in the *Foltz* or *Richardson* proceedings. Plaintiffs also name as defendants in their Amended Supplemental Complaint, U.S. News & World Report, Inc., now dissolved ("U.S. News I"), U.S. News' wholly-owned subsidiary, the Madana Realty Company, now dissolved, and U.S. News & World Report, Inc. ("U.S. News II"), the managing general partner of the newly formed U.S. News Limited Partnership ("U.S. News L.P.").[4] Plaintiffs maintain that the transactions in question were fraudulent within the meaning of the fraudulent conveyance statutes of Delaware, 6 Del.Code §§ 1301–1312 (1953), and the District of Columbia, D.C.

Code Ann. § 28–3101 (Michie 1981). They then assert that the conveyances must be set aside to preserve their ability to execute any judgment rendered in *Foltz* or *Richardson.*

In connection with their Supplemental Complaint, plaintiffs have also filed a motion for preliminary injunction, seeking reconveyance to U.S. News and Madana of the transferred assets and enjoining the defendants from taking any steps to distribute or otherwise liquidate those assets pending conclusion of this litigation. The supplemental defendants have opposed that motion and have, in addition, filed a motion to stay or dismiss the supplemental proceeding, offering assurances by Zuckerman that he will not further transfer or encumber the assets in question.

For the reasons set forth below, the Court denies plaintiffs' motion for preliminary injunction and grants the motion of the supplemental defendants to stay this proceeding, pending trial of the *Foltz* and *Richardson* actions.

## FACTUAL BACKGROUND

The facts giving rise to the issues involved in this supplemental proceeding were not brought to the attention of this Court until June 6, 1986, when U.S. News sought leave to file amended answers to the *Foltz* and *Richardson* complaints.[5] Counsel for U.S. News alleged in that motion that he had inadvertently and incorrectly admitted in his previously filed answers that U.S. News and Madana were currently Delaware corporations doing business in the District of Columbia. Those errors became apparent, counsel as-

---

1. Plaintiffs also assert a variety of pendent common-law claims. This Court's prior opinions in *Foltz* at 627 F.Supp. 1143 (1986); 613 F.Supp. 634 (1985); and 608 F.Supp. 1332 (1985), and in *Richardson* at 639 F.Supp. 595 (1986), detail the background of this litigation.

2. Plaintiffs were given leave to amend their Supplemental Complaint after discovery brought the issues into sharper focus.

3. According to Mr. Leslie A. Nicholson, lead counsel at Shaw, Pittman for U.S. News, Mr.

Drasner is now listed as "of counsel" to the firm.

4. Defendants named in the Supplemental Complaint, as opposed to those named in the underlying actions, will be referred to as the "supplemental defendants."

5. U.S. News filed answers to the *Foltz* Fifth Amended Complaint and the *Richardson* Second Amended Complaint on October 15, 1985 and February 18, 1986, respectively.

serted, when he reviewed a draft answer to a complaint recently filed in May 1986, *James E. Sacra v. U.S. News & World Report, Inc., et al.*, C.A. No. 86-1297, arising out of the same nucleus of facts as *Foltz* and *Richardson.*

In his motion to amend the answers previously filed in *Foltz* and *Richardson*, counsel for U.S. News informed plaintiffs and the Court that U.S. News I and Madana had, in fact, been dissolved and that the filing of amended answers was required to correct the record. Understandably, counsel for the *Foltz* plaintiffs was distressed at learning that two of the principal defendants to his clients' suit were dissolved and no longer viable business entities. In responding to and opposing the motion, counsel for *Foltz* and *Richardson* sought ways of protecting their clients' interests and ultimately determined that the most efficacious procedure would be to bring the present supplemental proceeding.

While it is true that U.S. News I and Madana no longer exist,[6] they have been replaced by other entities. Subsequent to its acquisition, Mortimer Zuckerman sold U.S. News I to U.S. News L.P., pursuant to a plan of complete liquidation and dissolution adopted in October 1984. The plan was consummated on September 30, 1985. The managing general partner of U.S. News L.P. is U.S. News II, whose sole shareholder is Zuckerman. Limited partners of U.S. News L.P. include Zuckerman, Drasner, various other individuals and a number of general partnerships. The remaining assets, including those of Madana Realty, were simply assigned to Zuckerman as sole shareholder of the Company.

The disturbing thing about these transactions is that they had the effect of limiting any recovery for the *Foltz* and *Richardson* actions to a $10 million letter of credit issued to defray litigation expenses in connection with *Foltz*,[7] and a number of insurance policies having a total face value of no more than $7 million.[8] Plaintiffs in *Foltz* and *Richardson* estimate their damages to be in the neighborhood of $100 million, well in excess of the $45.7 million held back from the U.S. News Profit-Sharing Plan pursuant to this Court's grant of preliminary injunctions in *Foltz, see* 613 F.Supp. 634 (1985), and *Richardson*, Order of July 15, 1985.

Equally disturbing is the fact that counsel for U.S. News never saw fit to inform the Court that the transactions complained of were being undertaken, even as the Court was looking to the continued existence of U.S. News I and Madana as a factor in determining the size of the Profit-Sharing Plan hold-back.[9]

In short, as of the filing of plaintiffs' Supplemental Complaint and motion for preliminary injunction, the funds available to satisfy a potential judgment in *Foltz* or *Richardson* were limited to at most some $17 million. While Zuckerman has now agreed to assume greater liability, the Court must nevertheless determine whether such assumption adequately protects plaintiffs' rights or whether some additional form of equitable relief is warranted.

## LEGAL ANALYSIS

### A. Plaintiffs' Motion for Preliminary Injunction

In deciding whether plaintiffs are entitled to a preliminary injunction, the Court must address the four well-established

---

6. Although the supplemental defendants assert that the two corporations do exist under Delaware law for the purposes of winding up and resolving outstanding litigation, it is indisputably true that they have no assets whatsoever. As presently constituted, U.S. News I and Madana are essentially judgment-proof.

7. The letter of credit was part of the original purchase price of U.S. News as it was purchased from its employee-shareholders.

8. The insurance policies expressly disclaim liability for ERISA and fraud, several of the major claims asserted by plaintiffs.

9. Even apart from the effect on the hold-back of those corporations' continued existence, U.S. News I and Madana would have been available presumably to respond in damages to plaintiffs' securities claims, liability for which could not be assessed against the Plan.

factors governing such relief: whether plaintiffs can demonstrate a substantial likelihood of prevailing on the merits; whether they will face irreparable injury absent a grant of injunctive relief; whether the grant of such relief would cause injury to defendants or other parties; and whether the public interest favors such relief. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir. 1958).

## 1. Likelihood of success on the merits

■ Plaintiffs maintain that they have made a showing that they are substantially likely to prevail in demonstrating that Mr. Zuckerman and the other supplemental defendants have in one way or another violated the Delaware fraudulent conveyance statute. They first argue that the supplemental defendants have rendered U.S. News I and Madana insolvent by transferring assets from those companies without receiving fair consideration in return. Under Delaware law, such a conveyance would be fraudulent as to creditors "without regard to ... actual intent...." 6 Del.Code § 1304. Second, plaintiffs assert that those defendants effected the transactions in question with an actual intent to "hinder, delay, or defraud" them in pursuing their rights, in violation of 6 Del.Code § 1307. Proof of such an intent would also entitle plaintiffs to relief under the District of Columbia fraudulent conveyance statute. *See* D.C.Code Ann. § 28–3101.[10] However, at this point in the recently filed supplemental proceedings and after considering counsel's argument and analyzing the documents produced thus far, the Court is not prepared to rule that the supplemental defendants' conduct, while facially suspect, rises to such a level to warrant the extreme relief now sought by plaintiffs.

Part of plaintiffs' quarrel with the supplemental defendants arises from the fact that Zuckerman purchased U.S. News through means of a leveraged buy-out. Of the $176 million paid for the Company, $135 million was borrowed. That loan, floated by Chase Manhattan Bank, had to be at least partially repaid within a year. To produce the necessary cash, Zuckerman found that he had to sell off some of the Company's assets.[11] His counsel asserts that the remaining assets of the U.S. News publishing business were sold to U.S. News L.P. largely to take advantage of more favorable tax treatment. For similar reasons, apparently, Zuckerman distributed the remaining assets, of which he was beneficial owner, to himself.

Plaintiffs' Supplemental Complaint raises several issues. First, were any of the transfers made without receiving "fair consideration," so as to incur liability under 6 Del.Code § 1304? The supplemental defendants assert that the publishing assets were sold for $123 million, a price arrived at upon completion of an independent appraisal. As for the remaining assets, defendants argue that, as sole shareholder, Zuckerman did not need to give consideration for the assets distributed to himself, aside from the shares that he held. Nevertheless, the focus of plaintiffs' concern seems to be that, regardless of whether Zuckerman paid adequate consideration for the assets transferred, the provision expressly made for the satisfaction of a potential judgment in favor of plaintiffs was grossly inadequate, both under 6 Del.Code §§ 1304 and 1307. Yet a plain reading of section 1304 seems to suggest that, in some cases, when a debtor who is otherwise insolvent transfers assets for adequate consideration, no fraud may be imputed to

---

**10.** The District of Columbia statute does not afford relief absent proof of actual intent. Not surprisingly, the supplemental defendants argue that District of Columbia law governs the transactions in question under the applicable choice-of-law principles. In view of the disposition of plaintiffs' motion herein, however, that argument need not be reached.

**11.** While plaintiffs complain that the Company's total assets were thus reduced, they fail to consider also that its liabilities were commensurately written down as well.

him. Indeed, the relevant case law seems to bear out that reading. *See Tri-State Vehicle Leasing, Inc. v. Dutton,* 461 A.2d 1007, 1008 (Del.1983) (party asserting validity of transfer must show *either* solvency after transaction *or* fair consideration received); *see also Faircloth v. Rash,* 373 A.2d 870, 873 (Del.Super.Ct.1977). Consequently, if the transactions in the instant case were made for adequate consideration, the fact that an insufficient sum was left for satisfaction of a potential judgment, standing alone, would not necessarily point towards fraudulent conduct.

Moreover, Zuckerman testified in deposition that he was aware, at the time that the transactions in question were effected, that he could be held personally liable as director of the dissolved corporations, should the $10 million letter of credit together with the insurance coverage prove insufficient to respond to a future judgment.[12] He also understood that, upon distribution to him as sole shareholder, whatever assets he received would be subject to a constructive lien in favor of any creditors, including plaintiffs. Plaintiffs have not effectively disputed either the validity of those principles nor Zuckerman's awareness of their effect on his undertakings. Moreover, the transactions complained of appear not to have impaired plaintiffs' rights, for even before they were effected plaintiffs had no more than a constructive lien upon the assets of U.S. News I. Zuckerman may have changed the business form of U.S. News, but he does not seem to have successfully avoided liability for plaintiffs' claims.

Of course, if it were the supplemental defendants' *intent* to "hinder, delay, or defraud" plaintiffs, they may be subject to liability under 6 Del.Code § 1307. Yet the Court cannot say, looking at the record developed at this point, that any such intent animated defendants. Nor can the Court be certain, on the other hand, that avoidance of onerous tax consequences was Mr. Zuckerman's sole concern in his dismantling operations. Yet because plaintiffs have failed to demonstrate that they will suffer irreparable harm absent equitable relief, as set forth below, the Court need not consider further the merits of plaintiffs' claims.[13]

## 2. Irreparable harm to plaintiffs

It is a well-established principle of equity jurisprudence that, where a plaintiff possesses an adequate remedy at law, equitable relief will not be available. Similarly, under *Holiday Tours,* a preliminary injunction will not issue absent a showing that the party seeking the injunction would be otherwise irreparably harmed. Throughout this supplemental proceeding, Zuckerman's counsel has represented that his client will bind himself to certain undertakings that would protect the plaintiffs' interests. Specifically, Mr. Zuckerman has offered to stipulate that he will neither transfer nor encumber, without prior notice to plaintiffs, the assets received from either U.S. News I or Madana, other than in the ordinary course of business, and that he will be personally liable for any judgment entered for plaintiffs in *Foltz* or *Richardson,* to the extent of the fair market value of the assets distributed to him upon the dissolution of U.S. News I and Madana. In this regard, he also stipulates that his personal guarantee will not be less than $40 million.[14] The proffered stipulation of Mr. Zuckerman is attached hereto as Appendix A.

---

**12.** Memorandum of Supplemental Defendants in Opposition to Motion for Preliminary Injunction, etc. (filed July 7, 1986), pp. 39–40.

**13.** This is not to say, however, that plaintiffs' claims are without merit. Plaintiffs will have the opportunity, should circumstances warrant it, to pursue those claims at an appropriate time. *See infra* Section B.

**14.** The $40 million figure was arrived at by subtracting from the total value of the Company upon purchase of $240 million ($176 million paid plus $64 million in assumed liabilities) $77 million paid to Chase Manhattan Bank in partial satisfaction of the outstanding purchase money loan, and by subtracting the $123 million paid by U.S. News L.P. for the magazine assets.

■ Plaintiffs' essential dissatisfaction with the proposed stipulation stems from their belief that the fair market value of the assets removed from U.S. News I and Madana is more on the order of $100 million.[15] The Court has difficulty in accepting the plaintiffs' position. They rely principally upon arguments of counsel to refute the validity of the sworn affidavits of independent accountants and appraisers, submitted by defendants. Plaintiffs have not produced counter-affidavits nor any form of credible testimony to suggest that defendants' calculations are inaccurate. On balance, the Court is of the opinion that the stipulation as proposed by Zuckerman militates decisively against a finding that plaintiffs would be irreparably harmed absent the equitable relief they seek.

Moreover, as noted *supra*, it is not clear that plaintiffs would be harmed by the transactions in question even absent Zuckerman's proposed stipulation. It appears that Zuckerman would be personally liable to the extent that any judgment entered in *Foltz* or *Richardson* exceeds the sum of the $10 million letter of credit and the value of the insurance coverage. And to the extent that any assets distributed to Zuckerman carry a constructive lien in favor of plaintiffs, plaintiffs are not really any worse off than they were before the transactions were effected.

### 3. Harm to defendants or third parties

The supplemental defendants assert that their primary interest in structuring the transactions complained of by plaintiffs was tax avoidance. While plaintiffs dispute this, they do not refute defendants' contention that, if the transactions in question are undone as plaintiffs desire, the result will be a substantial tax liability that

might actually lessen U.S. News' ability to respond in damages to plaintiffs' claims. No one can predict with any degree of certainty what consequences might follow and it is not surprising that the defendants picture the worst possible consequences. Certainly, reconveyance of the assets received by Zuckerman, on which there is already a constructive lien, is not going to *create* new assets to which plaintiffs might look for satisfaction of a potential judgment. There is also the likelihood that reconveyance would be time consuming, costly, and injurious to both defendants and plaintiffs, with little gained by anyone.

### 4. The public interest

It is the opinion of this Court that the plaintiffs have made an insufficient showing as to the other factors controlling a grant of injunctive relief to warrant a consideration of where the public interest lies. It is clearly recognized that it is this Court's responsibility to prevent fraudulent conveyances in corporate transactions so as to protect the interest of employee-shareholders such as the *Foltz* and *Richardson* plaintiffs. To interfere to the extent requested by counsel for the plaintiffs, through the issuance of a preliminary injunction, is unwarranted on basis of the record and in the face of the sworn representations of the defendants and the assurances of Mr. Zuckerman, but to the contrary, this Court is of the opinion that caution and restraint are appropriate. Should the plaintiffs prevail and should they receive a judgment award beyond that which is already guaranteed they might, of course, have to resort to further legal action. While that alternative may not be viewed with optimism, it is favored by this

---

**15.** That figure is arrived at by adding to what is asserted to be Zuckerman's interest (beyond the purchase price) in U.S. News L.P., $60 million, another $80 million, which plaintiffs claim is the value of the remaining assets distributed to him after the sale of the magazine assets to U.S. News L.P. Plaintiffs then reduce the resulting total of $140 million to $100 million, perhaps because the latter figure equals their estimated damages.

Supplemental defendants assert that the fair market value of the assets distributed to Zuckerman is $60 million, not $80 million as plaintiffs claim. To support that assertion, defendants offer an audit report prepared by the accounting firm of Coopers & Lybrand. Even so, for purposes of the proposed stipulation, Zuckerman is willing to accept liability only up to $40 million.

Court after careful consideration and review.

In sum, the Court concludes that plaintiffs have failed to demonstrate that the entry of a preliminary injunction is warranted.

## B. Defendants' Motion to Dismiss or Stay the Supplemental Proceeding

Defendants' motion to dismiss or stay the supplemental proceeding is premised upon the notion that it is unnecessary at this time, before the final resolution of the *Foltz* and *Richardson* matters, to inquire further into the merits of plaintiffs' claims against the supplemental defendants. Whatever may be said of their conduct, argue those defendants, plaintiffs will not be harmed thereby unless they obtain a large judgment in *Foltz* or *Richardson.* Accordingly, they maintain that the supplemental proceeding should be either stayed or dismissed without prejudice pending litigation of the underlying suits. Plaintiffs, on the other hand, believe that this proceeding should be tried along with *Foltz* and *Richardson* pursuant to Rule 18(b), Fed.R.Civ.P., which expressly provides that a claim for fraudulent conveyance may be tried along with the underlying claim.

While a joint trial of the three actions might prove convenient for plaintiffs, such joinder would not necessarily be desirable either for the several defendants or the Court. Joinder under Rule 18, of course, is wholly discretionary, and the Rule itself provides no guidelines as to when joinder should or should not be had. Rule 42(b), on the other hand, provides that separate trials of otherwise related claims may be had "to avoid prejudice, or when separate trials will be conducive to expedition and economy...." All of those factors strongly militate against joinder of the supplemental proceeding with *Foltz* and *Richardson.*

First, joinder will not be conducive to judicial economy or to the expedited resolution of the claims involved in the several actions. Counsel for a number of the defendants involved in the underlying suits have already expressed misgivings about the practicality of setting down the supplemental proceeding for trial along with *Foltz* and *Richardson. See* Transcript of Proceedings (July 14, 1986) at 39, 41–42. Pretrial in the underlying suits is already underway. Discovery in the supplemental proceeding has not yet been completed, nor have any dispositive motions been filed. Trial of *Foltz* and *Richardson,* moreover, is to commence within six weeks. On the other hand, there are at least two reasons why severance will not harm plaintiffs. First, trial of the supplemental proceeding will not be necessary unless a large judgment is won in *Foltz* or *Richardson.* Second, because the relief plaintiffs seek is equitable in nature, the supplemental proceeding would be tried to the Court and could thus follow *Foltz* and *Richardson* with relatively little delay.

Similarly, the prejudice that might arise from joinder is very real. Because one of the supplemental defendants is a former partner and presently "of counsel" in the Shaw, Pittman law firm currently representing U.S. News in *Foltz* and *Richardson,* as well as in the supplemental proceeding, that firm will be confronted with serious problems as to its continued participation in this litigation, which may well lead to its ultimate withdrawal. That eventuality would create problems. It would necessarily delay trial of the supplemental proceeding. It might also prove prejudicial to U.S. News as to the underlying claims, given that the jury will learn that that defendant is being represented by a firm that is potentially implicated in alleged wrongdoing. Additionally, at least one other defendant in *Foltz* has expressed concern lest the possibility of confusion imported by the supplemental proceeding prejudice its defense of the underlying claims and has indicated that it would move to sever. *See* Transcript of Proceedings (July 14, 1986) at 40. Finally, what use that plaintiffs may make, in *Foltz* and *Richardson,* of the matters brought to light in the supplemental proceeding will undoubtedly be the subject of numerous

motions *in limine.* If the motions are granted, and if the supplemental claims are nevertheless heard along with the underlying claims, the possibility that the jury will be confused by the limiting instructions that will be required is very great indeed.

In short, there is almost no reason to try the supplemental proceeding along with *Foltz* and *Richardson,* and every reason not to. Moreover, the Court is concerned with the possibility that further preparation of the supplemental proceeding before and during the trial of *Foltz* and *Richardson* will distract counsel's attention from the underlying suits. It thus appears that the prudent course to follow is to stay the supplemental proceeding, pending resolution of the underlying claims brought in *Foltz* and *Richardson.*

An appropriate Order will be entered.

## APPENDIX A

### STIPULATION OF SUPPLEMENTAL DEFENDANTS

Supplemental Defendants Mortimer B. Zuckerman; Fred Drasner; USNWR, Inc. (formerly U.S. News & World Report, Inc.) ("U.S. News I"); Madana Realty Company; and U.S. News & World Report, Inc. (formerly U.S. News Management Company) ("U.S. News II"), through the undersigned counsel, hereby stipulate as follows:

If the Supplemental Complaint, as amended, filed by Charles Foltz, et al., and David Richardson, et al., is stayed and held in abeyance pending final resolution, including exhaustion of all appeals or rights of appeal, of the *Foltz* and *Richardson* actions, Civil Actions Nos. 84–0447 and 85–2195; plaintiffs' motion for preliminary injunction is denied; and plaintiffs' claims for additional document production and for attorneys fees are stayed and held in abeyance, then:

1. In consideration of the foregoing, Mortimer B. Zuckerman and Fred Drasner agree that they will not sell or otherwise encumber the assets of PSI, Inc. or U.S. News and World Report Limited Partnership ("Limited Partnership"), other than in the usual and ordinary course of business of PSI, Inc. or the Limited Partnership without first giving written notice to the Court and the parties hereto at least thirty (30) days prior to any sale or encumbrance not in the usual and ordinary course of business.

2. In further consideration of the foregoing, Mortimer B. Zuckerman agrees not to sell or specifically encumber the joint venture partnership interests acquired by him from U.S. News I, its subsidiaries, or both, after October 12, 1984. This stipulation shall not, however, prevent the continued issuance by Mr. Zuckerman of personal guarantees or the operation, as managing partners, by the respective Boston Properties' nominees of the joint ventures under the August 9, 1981 Agreement between U.S. News I and Boston Properties, including but not limited to the placement of interim and permanent financing on the real estate owned by the joint ventures.

3. In further consideration of the foregoing, Mortimer B. Zuckerman agrees to be personally liable for any final judgment against U.S. News I in excess of the $10 million Additional Payment Fund and arising out of or resulting from the claims made by the plaintiffs in *Foltz* and *Richardson,* which liability shall not be greater than the fair market value of the assets distributed to him when U.S. News I and its subsidiaries were dissolved. For the purposes of this guarantee, Mr. Zuckerman stipulates that the fair market value of such assets shall be conclusively deemed to be not less than forty million dollars ($40,000,000.00).

4. Supplemental Defendants further agree to provide plaintiffs, on a quarterly basis beginning September 15, 1986, a report of the status of the $10 million Additional Payment Fund, which report shall show the defense costs paid and incurred, the interest credited, and the balance available in the Fund, as of the end of the preceding month.

 

Leslie A. Nicholson, Jr. P.C.
Leslie A. Nicholson, Jr., P.C.
Ralph A. Taylor, Jr.
SHAW, PITTMAN, POTTS
& TROWBRIDGE
Washington, D.C. 20036
Counsel for Supplemental
Defendants

## ORDER DENYING PRELIMINARY INJUNCTION

For the reasons set forth in the accompanying Memorandum Opinion, it is this 24th day of July, 1986,

ORDERED

That plaintiffs' motion for preliminary injunction is **denied**.

That the supplemental proceeding is **stayed** pending final resolution of the *Foltz* and *Richardson* actions.